UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| CHARLES B. JONES, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 04-1696 (RMU) |
| | : | | |
| v. | : | Document No.: | 11 |
| | : | | |
| ALAN GREENSPAN, Chairman of | : | | |
| The Board of Governors of the | : | | |
| Federal Reserve System, | : | | |
| | : | | |
| Defendant. | : | | |

**MEMORANDUM OPINION**

GRANTING IN PART AND DENYING IN PART THE DEFENDANT'S
MOTION TO DISMISS AND FOR SUMMARY JUDGMENT

**I.  INTRODUCTION**

The plaintiff, Charles Blaine Jones, brings an employment discrimination suit against his former employer, the Federal Reserve Board. The plaintiff alleges that the defendant retaliated against him after he filed an age discrimination charge with the Equal Employment Opportunity Commission ("EEOC"). This matter is before the court on the defendant's motion to dismiss and for summary judgment. Because the plaintiff has made out a prima facie case of retaliation with respect to the 2000 performance evaluation, but not as to the other performance evaluations, the court grants in part and denies in part the defendant's motion to dismiss and for summary judgment.

## II. BACKGROUND

### A. Factual Background

The plaintiff, a certified public accountant, was born on May 30, 1948. He began working at the defendant's Division of Reserve Bank Operations and Payment Systems in April 1991. Compl. ¶ 6. In July 1993, the plaintiff transferred to the Division of Banking Supervision and Regulation at grade level FR-27. *Id.* ¶ 8. Michael Martinson became the plaintiff's immediate supervisor in late 1997. Pl.'s Opp'n to Def.'s Mot. to Dismiss and for Summ. J. ("Pl.'s Opp'n") at 3.

The plaintiff alleges that Martinson denied him a promotion to a managerial position at the FR-29 grade level, and instead selected Heidi Richards, "a woman in her early thirties." *Id.* at 3, 6. Concerned that his supervisor was "effectuating [d]efendant's policy of promoting young women to positions of management," the plaintiff approached Martinson after Richards' selection. *Id.* at 4. In response to the plaintiff's concerns, Martinson allegedly "assured" the plaintiff that he would receive a promotion to grade level FR-28. *Id.*

"Having not received the promised promotion by September 1998," the plaintiff approached Martinson again to inquire about the status of the promotion to the FR-28 grade level. *Id.* Martinson allegedly "assured" the plaintiff that "he would be promoted with the next group of promotions." *Id.* The plaintiff alleges that during this time period, Martinson "effectively demoted [him] by stripping him of his primary job duties and reassigning them to Mrs. Richards." *Id.* at 5.

"Based on Mr. Martinson's assurances that a promotion was forthcoming, [the plaintiff] did not pursue the matter with the [d]efendant's EEO office." *Id.* at 4 - 5. On October 7, 1999,

Martinson promoted a group of individuals. *Id.* at 5. The plaintiff, however, was not one of those individuals. *Id.* at 6. Martinson explained that he could not justify the plaintiff's promotion "because of his recently truncated work responsibilities." *Id.*

Soon afterwards, in November 1999, the plaintiff filed an informal complaint with the defendant's EEOC office alleging age and gender discrimination. Compl. ¶ 9. The plaintiff filed a formal discrimination complaint in January 2000. Pl.'s Opp'n at 6. The plaintiff alleges that after he initiated the EEOC charge, Martinson "unjustifiably" downgraded the plaintiff's performance evaluations from "outstanding" in 1999 to "commendable" in the years 2000, 2001, 2002, and 2003. *Id.* at 2. The plaintiff further asserts that the allegedly retaliatory performance evaluations "have negatively impacted his salary increases, his bonus entitlement, and his [promotion potential]." Compl. ¶ 11.

### B. Procedural Background

On July 9, 2004, the plaintiff received a notice of final agency action, stating that an EEOC administrative judge dismissed the plaintiff's charge regarding his non-promotion to the FR-29 managerial position, concluding that it was time-barred. Pl.'s Opp'n at 9; Def.'s Mot., Ex. 9A at 1. The plaintiff filed his complaint in this court on October 4, 2004. The plaintiff's complaint alleges that the lowered performance ratings constitute unlawful retaliation, in violation of Tile VII, 42 U.S.C. § 2000e-1 *et seq.*, and the Age Discrimination in Employment Act, 29 U.S.C. § 633a *et seq*. ("ADEA"). Compl. ¶ 1. The defendant moves for: (1) dismissal of the complaint on the basis that the plaintiff did not exhaust his administrative remedies, and (2) summary judgment on the plaintiff's claims of retaliation. Def.'s Mot. at 1. The court now turns to these motions.

## III.  ANALYSIS

### A.  The Court Denies the Defendant's Motion to Dismiss

The defendant moves to dismiss the plaintiff's allegations that the 2000 and 2001 performance evaluations were retaliatory on the basis that the plaintiff did not exhaust his administrative remedies.  Def.'s Mot. at 1.  The plaintiff opposes the defendant's motion, arguing that he was not required to exhaust his administrative remedies with regards to the 2000 and 2001 performance evaluations.  Pl.'s Opp'n at 12.  Because the plaintiff is not required to exhaust administrative remedies to file a retaliation claim in court, the court denies the defendant's motion to dismiss the allegations concerning the 2000 and 2001 performance evaluations.

### (1) Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over only those claims that are (1) contained in the plaintiff's administrative complaint or claims "like or reasonably related to" those claims in the administrative complaint and (2) claims for which the plaintiff exhausted administrative remedies.  *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997).  It is the defendant's burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust administrative remedies.  *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the burden of pleading and proving it").  Meager, conclusory allegations that the plaintiff failed to exhaust his administrative remedies will not satisfy the defendant's burden.  *Id.* at 12 (noting that a mere assertion of failure to exhaust administrative remedies without more is "clearly

inadequate under prevailing regulations to establish a failure to exhaust administrative remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his administrative remedies).

### (2) The Plaintiff is not Required to Exhaust Administrative Remedies to File a Retaliation Claim in Court

The defendant argues that the plaintiff's claim that the 2000 and 2001 evaluations were retaliatory should be dismissed because the plaintiff did not timely pursue his administrative remedies. Def.'s Mot. at 8. Specifically, the defendant argues that the plaintiff should have amended his November 1999 EEOC charge to include subsequent retaliatory acts. *Id.* at 9. The defendant recognizes that the applicable regulation, 12 C.F.R. § 268.105(d), does not explicitly require that a motion to amend an EEOC charge be filed within 45 days of the allegedly discriminatory event. *Id.* at 8. The defendant nevertheless urges the court to read in such a requirement. *Id.* at 9.

The court, however, declines to read in such a requirement in the instant case because a plaintiff need not exhaust administrative remedies to file a retaliation claim in court. *Turner v. Dist. of Columbia*, 383 F. Supp. 2d 157, 178 (D.D.C. 2005). "The proposition that exhaustion is unnecessary for retaliation claims stems, in part, however, from the fear that filing a separate charge will result in more retaliation, and that a retaliation claim is necessarily related to the

underlying charge." *Id.*, 383 F. Supp. 2d at 178 n.11.  Accordingly, the court denies the defendant's motion to dismiss the plaintiff's claims that the 2000 and 2001 performance evaluations were retaliatory.

### B. The Court Grants in Part and Denies in Part the Defendant's Motion for Summary Judgment

The defendant further moves for summary judgment as to the plaintiff's claims that the 2000, 2001, 2002, and 2003 performance evaluations were retaliatory.  Def.'s Mot. at 11.  For the reasons that follow, the court denies the defendant's motion with respect to the 2000 performance evaluations, and grants the defendant's motion with respect to the 2001, 2002, and 2003 performance evaluations.

#### (1) Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

In addition, the nonmoving party may not rely solely on allegations or conclusory statements.  *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999); *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor.  *Greene*, 164 F.3d at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted."  *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary judgment motions in such cases with special caution.  *See Aka v. Wash. Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### (2) Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas*

framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) the employer took an adverse personnel action, and (3) there existed a causal connection between the two. *Id.* The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEO complaints. *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002). As for the second prong, "to establish an adverse personnel action in the absence of diminution of pay or benefits, plaintiff must show an action with materially adverse consequences affecting the terms, conditions, or privileges of employment." *Stewart v. Evans*, 275 F.3d 1126, 1134 (D.C. Cir. 2002) (quoting *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). Minor changes in work-related duties or opportunities do not qualify as actionable

injuries unless accompanied by adverse changes in the terms, conditions, or privileges of employment. *Id.* at 1135. Likewise, "[m]ere inconveniences and alteration of job responsibilities will not rise to the level of adverse action." *Id.* (internal citations omitted). Finally, under the third prong, the plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)). To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all").

If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action. *Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the *McDonnell Douglas* framework – with its presumptions and burdens – disappears,

and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted).  At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka,* 156 F.3d at 1290).  The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff.  *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289).  The plaintiff need not present evidence in each of these categories in order to avoid summary judgment.  *Aka*, 156 F.3d at 1289.  Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the total circumstances of the case.  *Id.* at 1291.

### (3) The Plaintiff Established a Causal Connection Between the 2000 Performance Evaluation and his Protected Activity

The plaintiff's November 2000 review rated his performance as "commendable," the third on a scale of five possible ratings.  Pl.'s Opp'n at 7; Def.'s Mot. at 3.  The November 2000 performance evaluation came five weeks after the plaintiff's attorney requested a hearing from an administrative judge at the EEOC.  Pl.'s Opp'n at 7.  According to the defendant, the plaintiff's allegation that the 2000 performance appraisal was retaliatory should be dismissed because the plaintiff cannot prove a prima facie case of retaliation.  Def.'s Mot. at 11.  Specifically, the defendant argues that the plaintiff cannot show a causal connection between the plaintiff's

protected activity and the allegedly retaliatory actions.[1] *Id*. The defendant bases its argument on the time that elapsed between the plaintiff's protected activity and the plaintiff's performance review. *Id.* at 12. To establish causation based on the temporal proximity[2] between the protected activity and an adverse employment action, the case law holds that the temporal proximity must be "very close." *Breeden*, 532 U.S. at 273 (citing with approval cases holding that a three-month and a four-month period is insufficient to establish the necessary temporal proximity).

The plaintiff's September 2000 request for a hearing constitutes a protected activity. *Singletary v. Dist. of Columbia*, 351 F.3d 519, 524-25 (D.C. Cir. 2003) (holding that an attorney's letter inquiring about the status of an appeal from a decision dismissing a discrimination charge constituted protected activity). Because the plaintiff received his November 2000 evaluation five weeks after his protected activity, the court determines that the plaintiff established the causal link necessary for a prima facie case of retaliation. *Goos v. Nat'l Ass'n of Realtors*, 715 F. Supp. 2, 3- 4 (D.D.C. 1989) (holding that the plaintiff has established temporal proximity when the plaintiff engaged in protected activity on June 23, 1988 and the defendant terminated the plaintiff on August 1, 1988).

---

[1] For purposes of the summary judgment motion, the defendant has assumed that the plaintiff can show the first two elements of the prima facie case of retaliation. Def.'s Mot. at 11. Further, the parties' arguments only focus on the third prong of the prima facie case. This court's analysis consequently addresses only the causation prong of the prima facie case.

[2] The plaintiff argues, in the alternative, that he is not relying solely on temporal proximity to establish causation. Pl.'s Opp'n at 21. He asserts that he was subjected to adverse treatment, thereby establishing causation. *Id.* He cites the following as adverse actions probative of the causation prong of the prima facie case: (1) Richards did not give the plaintiff a proxy vote during an interagency meeting, and (2) the plaintiff "was moved to a windowless office about 50 yards away from [his] peers." *Id.* at 21-22. Such actions are not sufficient to establish causation because they occurred before the plaintiff contacted the EEOC. Pl.'s Opp'n, Ex. 1. Because the plaintiff does not assert any other facts to establish causation, the court determines that the plaintiff's claim only relies on temporal proximity to fulfill the third prong of the prima facie case for retaliation.

Because the plaintiff established a prima facie case that the 2000 performance appraisal was retaliatory, "the burden now shifts to the employer to articulate a legitimate, non-discriminatory reason" for its action. *Sullivan-Obst v. Powell*, 300 F. Supp. 2d 85, 95 (D.D.C. 2004). The defendant explains that the plaintiff's 2000 performance rating was "commendable," rather than "outstanding," because "in some instances, plaintiff's assignments required additional work by managers or other analysts, and in other instances, plaintiff did not complete assignments." Def.'s Mot. at 14. The court accordingly concludes that the defendant met its burden of articulating a legitimate reason for the 2000 performance appraisal.

After the defendant employer successfully presents a legitimate, non-discriminatory reason for its actions, the plaintiff may survive summary judgment only by showing "that a reasonable jury could conclude from all of the evidence that an adverse employment decision was made for a discriminatory reason." *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003) (citing *Aka*, 156 F.3d at 1290). In deciding whether a reasonable jury could conclude that the plaintiff's 2000 performance evaluation was discriminatory, the court considers whether the jury could infer discrimination from the plaintiff's prima facie case. *Sullivan-Obst*, 300 F. Supp. 2d at 93 (citing *Waterhouse v. Dist. of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002)). The court also looks to evidence to attack the defendant's proffered explanation, and to any other evidence of discrimination. *Id.* Significantly, "[t]he plaintiff need not present evidence in each of these categories in order to avoid summary judgment." *Id.*

The plaintiff in this case has offered evidence from which a reasonable jury could conclude that the defendant's criticism in the 2000 performance appraisal is not based on his actual performance. For example, the plaintiff states that one of his supervisors said that he was

"old school." Pl.'s Opp'n at 25. The plaintiff further states that he was never given some of the assignments he allegedly failed to complete. *Id.* at 29. He also states that he and his supervisor agreed that he need not complete a particular assignment. *Id.* at 30. Drawing all justifiable inferences in the plaintiff's favor, the plaintiff implies that the defendant's proffered legitimate reason for lowering his 2000 performance rating is untruthful. The plaintiff, therefore, has presented a legitimate challenge to the defendant's proffered explanation. *Fischbach v. D.C. Dep't of Corrections*, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (citing a Seventh Circuit case concluding that a plaintiff wishing to rebut the employer defendant's proffered legitimate reason for the adverse action must show "that the explanation given is a phony reason"); *see also George v. Leavitt*, 407 F.3d 405, 414 (D.C. Cir. 2005) (holding that a reasonable jury could find pretext for a termination where the plaintiff stated that her work was satisfactory and there was no indication that the plaintiff's statement was "either incredible or fanciful"). The court therefore denies the defendant's motion for summary judgment on the claim related to the 2000 performance appraisal.

### (4) The Plaintiff Did not Establish a Causal Connection Between the 2001 Performance Evaluation and his Protected Activity

The defendant argues that the plaintiff has not made out a prima facie case that his 2001 performance evaluation was retaliatory because the plaintiff cannot establish that the 2001 "commendable" rating was causally related to his protected activity. Def.'s Mot. at 12. The plaintiff's attorney contacted the EEOC in July 2001 to determine the status of the plaintiff's request for a hearing. Pl.'s Opp'n at 8. The EEOC issued an acknowledgment of the plaintiff's hearing request in October 2001. *Id.* In that same month, the plaintiff received the allegedly

retaliatory evaluation. *Id.* Consequently, the plaintiff argues that he has established sufficient temporal proximity between the alleged retaliation and the protected activity to fulfill the causation prong of the prima facie case of retaliation. *Id.*

The EEOC's acknowledgment of the plaintiff's request for a hearing, however, is not a protected activity. *Breeden.,* 532 U.S. at 273 (reasoning that the EEOC's issuance of a right-to-sue letter is not a protected activity because the employee takes no part in it). By the plaintiff's own version of events, approximately three to four months elapsed between his attorney's inquiry and the allegedly retaliatory evaluation. Pl.'s Opp'n at 19. This time gap is too large for the plaintiff to establish the temporal proximity required to show that the allegedly retaliatory action is causally connected to his protected activity. *Id.* (citing cases holding that a three or four month gap between the plaintiff's protected activity and the defendant's adverse action was insufficient to establish a prima facie case of retaliation); *see also Sullivan-Obst*, 300 F. Supp. 2d at 94 (holding that the more than three month gap between the plaintiff's EEOC complaint and the allegedly adverse action was insufficient to show causation).

### (5) The Plaintiff Did not Establish a Causal Connection Between the 2002 and 2003 Performance Evaluations and his Protected Activity

The plaintiff's October 2002 and October 2003 performance evaluations, like the 2001 and 2002 performance evaluations, also rated his work performance as "commendable." Pl.'s Opp'n at 2. Except for a June 2002 motion to amend his EEOC charge, *id.* at 8, the plaintiff does not claim to have engaged in any protected activity prior to receiving the allegedly retaliatory performance evaluations. Accordingly, the court holds that the plaintiff has not shown a sufficient temporal proximity between his EEOC activity and the 2002 and 2003 evaluations.

## IV.  CONCLUSION

For the foregoing reasons, the court grants in part and denies in part the defendant's motion to dismiss and for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 13th day of December, 2005.

RICARDO M. URBINA<br>
United States District Judge