# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHARLES BLAINE JONES,                  :
                                       :
              Plaintiff,               :        Civil Action No.:       04-1696 (RMU)
                                       :
       v.                              :        Document No.:           34
                                       :
BEN S. BERNANKE,[1] *in his capacity as*  :
Chairman of the Board of Governors of  :
the Federal Reserve System,            :
                                       :
              Defendant.               :

## MEMORANDUM OPINION

### DENYING THE DEFENDANT'S MOTION TO DISMISS AND GRANTING THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

The plaintiff, Charles Blaine Jones, brings a four-count employment discrimination

complaint[2] against his former employer, the Federal Reserve Board.  The plaintiff alleges that the

---

[1]        The complaint names former Chairman of the Board of Governors of the Federal Reserve System Alan Greenspan as the defendant in this suit.  On February 1, 2006, Ben S. Bernanke succeeded Greenspan as the Chairman of the Board of Governors.  Thus, pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, the court substitutes Ben Bernake for Alan Greenspan as the proper defendant in this suit.  FED. R. CIV. P. 25(d)(1); *Network Project v. Corp. for Pub. Broad.*, 398 F. Supp. 1332, 1336 (D.D.C. 1975) (explaining that "[s]ubstitution is appropriate when the original officer is replaced by an acting officer").

[2]        The plaintiff requests discovery pursuant to Federal Rule of Civil Procedure 56(f).  The plaintiff, as the nonmoving party, must state by affidavit why he is unable to present the facts necessary to defeat summary judgment.  *Strang v. U.S. Arms Control & Disarmament Agency,* 864 F.2d 859, 861 (D.C. Cir. 1989); *see also Hotel & Rest. Employees Union, Local 25 v. Attorney Gen.*, 894 F.2d 1256, 1269 (D.C. Cir. 1986) (noting that the affidavit requirement helps "prevent fishing expeditions"), *vacated on other grounds*, 808 F.2d 847 (D.C. Cir. 1987).  In addition, the plaintiff must show a reasonable basis to suggest that discovery would reveal triable issues and the reasons why he cannot produce those facts in opposition to the motion.  *Byrd v. Envtl. Prot. Agency*, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999).

       Although the plaintiff in this case prepared an affidavit for discovery, the affidavit does nothing more than provide a narrative of the facts.  In his opposition brief, however, the plaintiff

Dockets.Justia.com

defendant discriminated against him on account of his age and gender in violation of the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. §633a *et seq.* and Title VII of the Civil

Rights Act ("Title VII"), 42 U.S.C. §2000e-1 *et seq.,* respectively, and retaliated against him after

he filed an age discrimination charge with the Equal Employment Opportunity Commission

("EEOC").  In response, the defendant moves for dismissal and for summary judgment on the age

and gender discrimination counts.  Because equitable estoppel is applicable, the court denies the

defendant's motion to dismiss on jurisdictional grounds.  Because the plaintiff has failed to meet

his burden of proof for age and gender discrimination, however, the court grants the defendant's

motion for summary judgment.

---

describes the information he intends to discover and claims he cannot challenge the defendant's
representations because he does not possess information pertinent to his claim.  Pl.'s Opp'n to Def.'s
Mot. to Dismiss and for Summ. J. ("Pl.'s Opp'n") at 11.

      The court concludes that the plaintiff has not shown that discovery would reveal triable
issues of fact because the record already contains evidence similar to that which the plaintiff intends
to obtain through discovery.  *Compare* Pl.'s Opp'n at 9-12 *with* Def.'s Mot. to Dismiss Counts I & II of the
First Am. Compl. or, in the Alternative, for Summ. J. ("Def.'s Mot.") Exs. 1-6 *and* Pl.'s Opp'n Exs. 1-18
*and* Def.'s Consolidated to Pl.'s Opp'n ("Def.'s Reply") Exs. 1-10.  Additionally, the plaintiff does not
explicitly state why he cannot oppose the defendant's motion for summary judgment and he does not
explain how the information he seeks to discover would create triable issues of fact.  *Strang*, 864 F.2d at
861 (denying the plaintiff's motion for discovery because the plaintiff did not concretely state why she
could not oppose summary judgment and instead offered a conclusory statement that discovery would be
invaluable to the case).  Moreover, even if the plaintiff discovered the evidence he seeks, he would still
be unable to establish pretext for discrimination because the information the plaintiff intends to discover
is either irrelevant, or is, again, sufficiently similar to information already in the record.  Pl.'s Opp'n at 9-
10.  Accordingly, the court denies the plaintiff's request for discovery.

## II.  BACKGROUND

### A.  Factual Background

The plaintiff, a certified public accountant, was born on May 3, 1948.  He began working at the defendant's Division of Reserve Bank Operations and Payment Systems in April 1991. First Am. Compl. ("Compl.") at 2.  In July 1993, the plaintiff transferred to the Division of Banking Supervision and Regulation at a level FR-27.  *Id.*; Def.'s Mot. to Dismiss Counts I & II of the First Am. Compl. or, in the Alternative, for Summ. J. ("Def.'s Mot.") at 3.

The plaintiff alleges that in March 1998, Michael Martinson, his then-supervisor, did not promote him to a managerial position at the FR-29 level and instead selected Heidi Richards, a "woman in her early thirties."  Compl. at 3-4.  Concerned that Martinson was "effectuating [d]efendant's policy of promoting young women to positions of management," the plaintiff approached Martinson after Richards' selection.  Pl.'s Opp'n to Def.'s Mot. to Dismiss and for Summ. J. ("Pl.'s Opp'n") at 6.  In response to the plaintiff's concerns, in May 1998, Martinson allegedly promised the plaintiff a promotion to a FR-28 level.  Compl. at 3.  When the plaintiff inquired about his promised promotion in September 1998, Martinson allegedly assured him that he "would be promoted with the next group of promotions."  *Id.*  In May and June of 1999, the plaintiff confronted Martinson yet again and Martinson gave him the same response.  *Id.* at 4. Based on Martinson's assurances of a promotion, the plaintiff did not pursue the matter with the defendant's EEOC office.  *Id*. at 3.

Shortly thereafter, the plaintiff was sent abroad on a teaching assignment.  *Id.* at 4. During this time period, a group of employees was promoted while another group received pay increases.  *Id.* at 4.  The plaintiff, however, was not among those employees that were promoted

3

or received pay increases.  When the plaintiff confronted Martinson about his failure to promote

him, Martinson stated that he was unable to justify a promotion for the plaintiff because of "the

limited nature of [the plaintiff's] work and responsibilities."  *Id.*  As a result, in November 1999

the plaintiff filed an informal charge with the defendant's EEOC office alleging retaliation.  *Id.* at

4-5.

### B.  Procedural History

The plaintiff filed an amended complaint on August 29, 2006.  *Id.* at 1.  The complaint

alleges that the defendant unlawfully retaliated against him by lowering his performance ratings

in 2000, 2001, 2002, and 2003 and that the defendant discriminated against him on the basis of

his age and gender by failing to promote him.  *Id.*  The defendant moves to dismiss or in the

alternative for summary judgment.  Def.'s Mot. at 1.  The court now turns to the defendant's

motion.

## III.  ANALYSIS

### A.  The Court Denies the Defendant's Motion to Dismiss Counts I and II

The defendant moves to dismiss counts I and II[3] of the plaintiff's complaint, which allege

that the plaintiff was not selected for the FR-29 position based on gender and age discrimination,

---

[3]        In its motion, the defendant states that it only addresses the first two counts of the
plaintiff's four-count complaint because it addressed the merits of the other counts in an earlier motion.
The court, however, granted the plaintiff's motion to amend his complaint on August 29, 2006.
"Because the original complaint now is superseded by the amended complaint, the court denies without
prejudice all pending motions pertaining to the original complaint."  *Bancoult v. McNamara*, 214 F.R.D.
5, 13 (D.D.C. 2003).  If the defendant wishes to address counts III and IV of the plaintiff's complaint via
dispositive motion, the defendant may file its motion not later than thirty calendar days from the date of
this opinion.

on the basis that the plaintiff did not pursue his administrative remedies in a timely manner.
Def.'s Mot. at 2, 10. For the reasons that follow, the court denies the defendant's motion to
dismiss.

### (1) Legal Standard for Exhaustion of Administrative Remedies

In actions brought under Title VII and the ADEA, a court has authority over only those
claims that are (1) contained in the plaintiff's administrative complaint or claims "like or
reasonably related to" those claims in the administrative complaint and (2) claims for which the
plaintiff exhausted administrative remedies. *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir.
1995); *Caldwell v. Serv. Master Corp.*, 966 F. Supp. 33, 49 (D.D.C. 1997). It is the defendant's
burden to prove by a preponderance of the evidence that the plaintiff failed to exhaust
administrative remedies. *Brown v. Marsh*, 777 F.2d 8, 13 (D.C. Cir. 1985) (stating that "because
untimely exhaustion of administrative remedies is an affirmative defense, the defendant bears the
burden of pleading and proving it"). Meager, conclusory allegations that the plaintiff failed to
exhaust his administrative remedies will not satisfy the defendant's burden. *Id.* at 12. (noting
that a mere assertion of failure to exhaust administrative remedies without more is "clearly
inadequate under prevailing regulations to establish a failure to exhaust administrative
remedies").

Dismissal results when a plaintiff fails to exhaust administrative remedies. *Rann v. Chao*,
346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's
ADEA claim for failure to exhaust administrative remedies); *Gillet v. King*, 931 F. Supp. 9, 12-
13 (D.D.C. 1996) (dismissing the plaintiff's Title VII claim because he failed to exhaust his
administrative remedies).

**(2) Equitable Estoppel Applies to the Plaintiff's Claims**

The defendant urges the court to dimiss the plaintiff's claim that the defendant discriminated against him when he was not promoted in March of 1998 because the plaintiff did not timely pursue his administrative remedies. Def.'s Mot. at 2, 10. The plaintiff concedes that he did not file his complaint with the EEOC in a timely manner, but he explains that the defendant dissuaded him from filing a timely complaint because Martinson promised him a promotion, albeit to a lower level than he originally sought. Compl. at 4; Def.'s Mot. at 10.

Equitable estoppel "prevents a defendant from asserting untimeliness where the *defendant* has taken active steps to prevent the plaintiff from litigating in time." *Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998) (emphasis in original). The defendant maintains that the court should not apply equitable estoppel to the instant facts because Martinson did not promise to promote the plaintiff to the FR-29 position, but rather, promised to promote him to the FR-28 level. Def.'s Mot. at 11-12. This promise of a promotion to a lower level than that sought by the plaintiff, the defendant argues, does not trigger equitable estoppel. *Id.*

An employer's misleading statements suggesting that a grievance will be resolved in the plaintiff's favor can establish equitable estoppel. *Currier*, 159 F.3d at 1368 (internal citations and quotations omitted). Because an employee in the plaintiff's position would be understandably reluctant to file an EEOC charge once he received a promise of a promotion, even if that promotion is not the same as the one the plaintiff originally sought, *id.*; *see also Sanders v. Veneman*, 131 F. Supp. 2d 225, 230 (D.D.C. 2001) (tolling the timely filing requirement because the plaintiff's supervisor made repeated promises of an eventual promotion), the court denies the

6

defendant's motion to dismiss on the basis of failure to exhaust administrative remedies in a timely fashion.

**B**.  **The Court Grants the Defendant's Motion for Summary Judgment on Counts I and II**

**(1) Legal Standard for a Motion for Summary Judgment**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  To determine which facts are "material," a court must look to the substantive law on which each claim rests.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.  By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment.  *Id.*

The moving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record, *Green*, 164 F.3d at 675 (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Green*, 164 F.3d at 675.

Finally, the D.C. Circuit has directed that because it is difficult for a plaintiff to establish proof of discrimination, the court should view summary-judgment motions in such cases with special caution. *See Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 879-80 (D.C. Cir. 1997), overturned on other grounds, 156 F.3d 1284 (D.C. Cir. 1998) (en banc); *see also Johnson v. Digital Equip. Corp.*, 836 F. Supp. 14, 18 (D.D.C. 1993).

### (2) Legal Standard for Gender and Age Discrimination

Generally, to prevail on a claim of discrimination under Title VII or the ADEA, a plaintiff must follow a three-part burden-shifting analysis generally known as the *McDonnell Douglas* framework. *Lathram v. Snow*, 336 F.3d 1085, 1088 (D.C. Cir. 2003). The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection" . . . . Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination . . . . The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of race discrimination under Title VII, the plaintiff must show that "(1) [he] is a member of a protected class; (2) [he] suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999); *Stewart v. Ashcroft*, 352 F.3d 422, 428 (D.C. Cir. 2003); *Carroll v. England*, 321 F. Supp. 2d 58, 68 (D.D.C. 2004). To establish a prima facie case of age discrimination under the ADEA, the plaintiff must demonstrate "facts sufficient to create a reasonable inference that age discrimination was a determining factor in the employment decision." *Cuddy v. Carmen*, 694 F.2d 853, 856-57 (D.C. Cir. 1982); *Miller v. Lyng*, 660 F. Supp. 1375, 1377 (D.D.C. 1987). Such an inference is created if the plaintiff can show (1) he belongs to the statutorily protected age group; (2) he was qualified for his position and was performing his job well enough to meet his employer's legitimate expectations; (3) he suffered an adverse employment action despite his qualifications and performance; and (4) he was disadvantaged in favor of similarly situated younger employees. *Reeves*, 530 U.S. at 142; *Hall*, 175 F.3d at 1077; *Paquin*, 119 F.3d at 26 (citing *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 342 (D.C. Cir. 1983)).

"The burden of establishing a prima facie case of disparate treatment is not onerous." *Burdine*, 450 U.S. at 253. If the plaintiff establishes a prima facie case, a presumption then arises that the employer unlawfully discriminated against the employee. *Id.* at 254. To rebut this presumption, the employer must articulate a legitimate, non-discriminatory reason for its action.

*Id.* The employer "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* Rather, "[t]he defendant must clearly set forth, through the introduction of admissible evidence, reasons for its actions which, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502 (1993).

If the employer successfully presents a legitimate, non-discriminatory reason for its actions, "the McDonnell Douglas framework – with its presumptions and burdens – disappears, and the sole remaining issue is discrimination *vel non*." *Lathram*, 336 F.3d at 1088 (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." *Id.* (citing *Aka v. Wash. Hosp. Ctr.*, 156 F.3d 1284, 1290 (D.C. Cir. 1998)) (en banc). The court must consider whether the jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. *Waterhouse v. District of Columbia*, 298 F.3d 989, 992-93 (D.C. Cir. 2002) (quoting *Aka*, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. *Aka*, 156 F.3d at 1289. Rather, the court should assess the plaintiff's challenge to the employer's explanation in light of the totality of the circumstances of the case. *Id.* at 1291.

### (3) The Court Grants the Defendant's Motion for Summary Judgment on the Gender Discrimination Claim

Under the McDonnell Douglas framework, the plaintiff bears the initial burden of

10

establishing a prima facie case of sex discrimination. *McDonnell Douglas*, 411 U.S. at 802. The plaintiff asserts that he has established a prima facie case by alleging that the defendant had a policy of advancing young women and because a high-level official referred to him as "old school."[4] Pl.'s Opp'n at 16. In addition, the plaintiff argues that he was more qualified for the FR-29 position than Richards. *Id.*

The plaintiff, a male, "is a member of a historically favored group," and hence does not belong to a protected class. *Bryant v. Leavitt*, 475 F. Supp. 2d 15, 26 (D.D.C. 2007)*; Bell Runyon*, 1997 U.S. Dist. LEXIS 10909, at *4 (D.D.C. July 16, 1997). As a male, the plaintiff may establish a prima facie case if he presents evidence of background circumstances that support an inference of discrimination.[5] Two types of evidence can constitute "background circumstances," namely (1) evidence indicating that an employer has some reason or inclination to discriminate against males, and (2) "evidence indicating that there is something fishy about the facts of the case at hand that raises an inference of discrimination." *Harding,* 9 F.3d at 153. Importantly, "the second type of 'background circumstance' may create a prima facie case by itself." *Id.* And "other evidence about the 'background' of the case at hand – including an allegation of superior qualifications – can be equally valuable" in establishing a prima facie case. *Id.* (internal quotation omitted). For the reasons that follow, the court concludes that the plaintiff has not established a prima facie case of gender discrimination.

---

[4]     The plaintiff presents these same arguments in support of his argument that the defendant's proffered nondiscriminatory reason for not promoting him are pretextual.

[5]     "Such a showing replaces a minority plaintiff's showing of protected status." *Bell v. Runyon*, 1997 U.S. Dist. LEXIS 10909, at *4 (D.D.C. July 16, 1997); *see also Harding*, 9 F.3d at 153.

### a. The Defendant's Alleged Policy of Promoting Young Women

The plaintiff first attempts to make out a prima facie case by alleging that the defendant admitted it had a policy of promoting young women. *Id.* Although the plaintiff does not cite to the record to support this contention, he is presumably referring to Stephen Schemering's deposition testimony. During the deposition, the plaintiff's counsel asked Schemering whether the defendant had a policy of promoting young women. Def.'s Reply Ex. 2 at 193-194. Schemering answered, "[o]nly in the context of EEO goals and objectives that would cover the gender issue." *Id.* at 194. When prodded further by the plaintiff's counsel, Schemering elaborated, "well, there again, one of the objectives of the diversified workplace and, you know, that is something we try to accomplish." *Id.* But, Martinson, who denied the plaintiff the promotion to the FR-29 position, told the plaintiff's counsel that he did not know of any practice of trying to promote young women into senior positions. Def.'s Reply Ex. 4 at 241.

At most, the defendant's deposition testimony shows that it has a "concern for diversity in the workplace." *Lutes v. Goldin*, 62 F. Supp. 2d 118, 131 (D.D.C. 1999). But, an employer's statement that it is committed to diversity "if expressed in terms of creating opportunities for employees of different races and both genders . . . is not proof of discriminatory motive with respect to any specific hiring decision. Indeed, it would be difficult to find today a company of any size that does not have a diversity policy." *Bernstein v. St. Paul Cos., Inc.*, 134 F. Supp. 2d 730, 739 n.12 (D. Md. 2001) (internal citations omitted) (citing *Lutes*, 62 F. Supp. 2d at 128); *see also Reed v. Agilent Techs., Inc.*, 174 F. Supp. 2d 176, 185 (D. Del. 2001) (concluding that unless the plaintiff can demonstrate that the defendant's diversity policy "had some negative impact upon his individual employment situation, the mere existence of a policy promoting diversity awareness

12

is not evidence of discrimination").  As Martinson stated that he was unaware of any alleged

policy of promoting young women, the plaintiff cannot show that the policy had a negative impact

on his employment situation.  In short, the mere existence of a diversity policy, without more, is

insufficient to make out a prima facie case of reverse discrimination.

### b.  The "Old School" Comment

The plaintiff also attempts to establish a prima facie case by arguing that his third-level

supervisor, William Ryback "who had input into Mr. Martinson's promotion of Ms. Richards [to

the FR-29 position] justified the decision not to promote [the plaintiff] to an FR-28 position a year

later by stating that [the plaintiff] was too 'old school.'"  Pl.'s Opp'n at 16.  Although it was

Ryback, and not Martinson, who made the comment, the plaintiff claims that because Martinson

consulted Ryback about both the FR-29 and the FR-28 promotions, a reasonable jury could infer

discriminatory animus on Martinson's part.  *Id.* at 19-20.  In its opposition, the defendant

contends that Ryback's "old school" comment addressed the plaintiff's performance and

leadership style and had nothing to do with the plaintiff's age.  Def.'s Reply at 8.  The defendant

further points out that Ryback made the comment two years after Martinson declined to promote

the plaintiff.

The court must examine whether a reasonable fact-finder could infer discriminatory

animus on Martinson's part based on Ryback's comment.  *Gipson*, 460 F. Supp. 2d at 23.  To this

end, the court considers Ryback's old school remark in light of the surrounding circumstances.

*Threadgill,* 377 F. Supp. 3d. at 166-66.  Ryback's statement was extracted from an affidavit he

signed in July 2000, where Ryback used the term "old school" to mean that the plaintiff "was not

a visionary or a motivational type performer" and that he was "more or less old school."  Pl.'s

Opp'n at 19; Def.'s Reply at 10.  Leaving aside for one moment that the plaintiff's non-selection

occurred before the allegedly discriminatory comment, Ryback's affidavit indicates that the

comment is not related to age, and at best, might be correlated to age.  *See Beeck v. Fed. Express

Corp.*, 81 F. Supp. 2d 48, 52 (D.D.C. 2000) (noting that when an employer's decision is wholly

motivated by factors other than age, the problem of inaccurate and stigmatizing stereotypes

disappears even if the motivating factor is correlated with age) (internal citation and quotation

omitted).

Simply put, the plaintiff's allegation that he was not selected because Ryback considered

him "old school" in July 2000 is not the same as alleging that Martinson did not promote him on

the basis of his age in the year 1998.  *See id.* at 53 (holding that an allegation claiming that the

plaintiff is old school is not the same as claiming that he was fired because he was old).

Additionally, the characterizations of the plaintiff's vision, motivational style, and leadership are

independent, nondiscriminatory factors that justify his non-selection.  *See Young*, 457 F. Supp. 2d

at 20 (noting that it is well within the employer's discretion "to base personnel decisions on

nondiscriminatory factors in aggregate") (internal citations omitted).  Because no reasonable fact-

finder could conclude that Ryback's comment, made in a July 2000 affidavit, is indicative of

Martinson's alleged discriminatory animus in 1998, the plaintiff fails to establish pretext by way

of the discriminatory remark.  *Gipson*, 460 F. Supp. 2d at 23.

### c.  The Plaintiff's Allegedly Superior Qualifications

The plaintiff argues that the facts he presents in the pretext section of his opposition brief

also establish a prima facie case.  Pl.'s Opp'n at 16.  As discussed *supra*, a plaintiff may establish

a prima facie case of reverse discrimination if he shows that he had "superior qualifications."

14

*Harding*, 9 F.3d at 153.  In support of the contention that he has superior qualifications, the plaintiff submits evidence of his experience with the Federal Reserve Board, his education, and his performance evaluations.  Pl.'s Opp'n at 29.  The plaintiff asserts that he was far more qualified than Richards for the FR-29 manager position because he had worked in the very division that needed a manager, whereas Richards had worked in another division (the Reserve Bank Operations and Payment Systems division) for six months at an FR-26 grade level.  Pl.'s Opp'n 20-21.  The defendant, on the other hand, maintains that Richards was more qualified than the plaintiff.   Def.'s Consolidated Reply to Pl.'s Opp'n ("Def.'s Reply") at 16-17.

    The plaintiff also argues that Richards did not have "six years [of] specialized experience" required for the FR-29 position as per the job announcement.  *Id*. at 30.  In addition, the plaintiff stresses that Richards would require extensive supplemental training to fulfill the duties of the position, particularly with respect to her supervisory skills.  *Id*.  The defendant responds by noting that the manager position involved new responsibilities that the plaintiff had never performed in his capacity as a supervisory Electronic Data Processing ("EDP")  analyst, and as such, he too would need training to assume the managerial responsibilities.  Def.'s Reply at 19.  Further, the defendant contends that Richards possessed several years of relevant experience, as she had been a financial analyst for ten years, including stints as an analyst or senior analyst at the Board for five years and two years as a Financial Economist at the Department of Treasury.  *Id*. at 18.  The defendant also points to Richards' educational background: she has a bachelors degree in economics, a Masters in Public Administration from Harvard University, as well as a doctorate degree in Finance from George Washington University.  Def.'s Mot. at 17.

    The plaintiff fails to make a prima facie case of reverse discrimination because he cannot

15

show that his qualifications were superior to Richards' qualifications. Viewed in the light most favorable to the plaintiff, this is a situation in which the defendant chose between two equally-qualified candidates. Specifically, "all internal candidates for positions at the Board were initially screened by the Division of Human Resources Management ('HRM') to ensure that they met the minimum qualifications for the position." Def.'s Reply at 18. Only those individuals who met the minimum qualifications for the position received an interview. *Id.* "Thus, both plaintiff's and Ms. Richards' qualifications were independently reviewed by HRM and determined to meet the minimum qualifications for the position." *Id.*

Although the plaintiff had more experience working at the Federal Reserve Board than Richards, he did not possess the requisite expertise in banking and securities, nor did he possess the relevant skill set required for the FR-29 manager position. Pl.'s Opp'n at 29; Def.'s Reply at 17-19. Despite the plaintiff's years of experience with the Board, he did not have experience performing the job for which he applied. *See Gutierrez*, 435 F. Supp. 2d at 71 (inferring a sufficient disparity in qualifications where the plaintiff had "many more years of distinguished service in that very job"). Further, although the plaintiff trained and advised other EDP analysts, his supervisory role was confined to IT and information systems, whereas Richards had acquired years of experience as a financial economist and as a senior analyst in the relevant areas of finance, banking and securities. Def.'s Reply. at 18; Pl.'s Opp'n at 24. Finally, both the plaintiff and Richards lacked experience in certain subject areas and both had positive performance evaluations during their time at the Board. *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 272 (4th Cir. 2005) (stating that "the performance evaluation is a review of an employee's performance in her current position, while the process of selecting a person for a

promotion involves a consideration of how that employee will perform in a different position.  In other words, the performance evaluation and the interview selection stage, which involves an analysis of how the applicant meets the core and functional competencies of the position that is open, are not interchangeable" and noting that "[w]e cannot require that different supervisors within the same organization must reach the same conclusion on an employee's qualifications and abilities").  Because the plaintiff does not demonstrate that a reasonable jury could conclude that his qualifications were superior to those of Richards, the court determines that he has not made a prima facie case of gender discrimination.  *Harding*, 9 F.3d at 153.

### (4) The Court Grants the Defendant's Motion for Summary Judgment on the Age Discrimination Claim

In addition to gender discrimination, the plaintiff also alleges that the defendant discriminated against him on account of his age in violation of the ADEA.  The defendant argues that it is entitled to summary judgment on the plaintiff's age discrimination claim because the plaintiff cannot prove that the defendant's reasons for not hiring him are pretextual and because no reasonable fact finder could find that the plaintiff's non-selection was due to age discrimination.  Def.'s Mot. 13, 16.  The plaintiff, on the other hand, asserts that summary judgment is not appropriate because a reasonable fact finder could conclude that the defendant's decision to hire an allegedly unqualified, younger woman raises an inference of discrimination and that the defendant's stated reasons for not hiring him are a pretext.  Pl.'s Opp'n at 13, 15.

### a. **The Plaintiff's Prima Facie Case**

In contrast to his sex discrimination claim, the plaintiff easily carries his burden of establishing a prima facie case of age discrimination.[6]  At the time the plaintiff applied for the position he was 49 years old.  Further, only qualified applicants were granted an interview and because the plaintiff received an interview, the court presumes that he was qualified for the position.  The plaintiff, however, was not selected for the position and, instead, the position went to Richards who was 34 years old at the time of selection.  Def.'s Reply at 18; Pl.'s Opp'n at 5; *Threadgill v. Spellings*, 377 F. Supp. 2d 158, 161-162.

### b. **The Defendant's Legitimate, Nondiscriminatory Reason**

The defendant asserts that Martinson "honestly and objectively believed that Richards was better qualified for the manager position as a result of her excellent credentials, communication skills, and experience in problem solving that would be applied to electronic banking, fiduciary activities, and the Shared National Credit Program."  Def.'s Mot. at 14.  *Burdine*, 450 U.S. at 254. Before the selection process, Martinson had worked with Richards and "had been impressed with her analytical and communication skills," and he was also impressed with the level of responsibility her then-supervisor had given her.  *Id.*  Martinson also felt that the plaintiff was not able to explain things in non-technical terms and that he did not have strong skills in relevant areas, such as finance.  *Id.* at 14-15.  Because the defendant based its decision on non-discriminatory factors, the defendant has met it burden of rebutting the plaintiff's prima facie case.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (explaining that the

---

[6]     The defendant presumes the plaintiff met his initial burden for purposes of the summary judgment motion.  Def.'s Mot. at 13; Pl.'s Opp'n at 15.

defendant's "burden is one of production, not persuasion").

### c. Pretext

The plaintiff attempts to establish that the defendant's proffered nondiscriminatory reason is pretextual in a number of ways. First, he argues that the defendant had an unwritten policy of promoting young women. Pl.'s Opp'n at 18-19. Second, he contends that Ryback referred to him as "old school." *Id.* at 19-20. Third, he points to alleged inconsistencies between Martinson's performance evaluations and Martinson's reasons for not selecting him. *Id.* at 20-23. Fourth, he argues that Richards was not as well-qualified as he was for the position. *Id.* The plaintiff's first, second, and fourth assertions regarding pretext are essentially the same facts that he proffered to support his prima facie case of discrimination. *Id.* at 15-16. For the reasons stated *supra*, however, these arguments are not sufficient to demonstrate that the defendant's proffered nondiscriminatory reason for not selecting the plaintiff is a pretext for age discrimination. *Brown v. Bank One, N.A.*, 168 Fed. Appx. 46, 53 (6th Cir. 2006) (stating that facts that were insufficient to establish a prima facie case were also insufficient to establish pretext).

With respect to the plaintiff's attempt to establish pretext by showing that Martinson's proffered nondiscriminatory reason contradicts other accounts of his decision, Pl.'s Opp'n at 17, the court notes that an employment discrimination plaintiff can meet his burden of proving pretext by showing that the decision-maker's proffered nondiscriminatory reason was not the actual reason relied on, but was instead manufactured after the fact. *Kalinoski v. Gutierrez*, 435 F. Supp. 2d 55, 72 (D.D.C. 2006). In other words, a plaintiff can survive summary judgment if he shows that the employer's proffered, nondiscriminatory reason contradicts other accounts of its decision or that it is inconsistent with other contemporaneous accounts of the employer's decision. *Id.*;

19

*Gipson*, 460 F. Supp. 2d at 26-27.

        In attempting to show that Martinson's reasons are pretextual, the plaintiff offers evidence

from his performance evaluations for 1997, 1998, and 1999.  Pl.'s Opp'n at 21-26.  The

performance evaluations highlight certain competencies and explicitly state that the plaintiff has

"excellent communication skills," and "extensive background in both financial accounting and

information systems."  *Id.* at 24-25.  The plaintiff reasons that the language in his performance

evaluations contradicts Martinson's non-discriminatory reasons for non-selection.  *Id.* at 25.  The

defendant, on the other hand, maintains that the performance evaluations for the years in question

were not written by Martinson and that Martinson did not endorse the particular language in the

evaluation.  Def.'s Reply at 12.  The defendant, moreover, claims that the performance

evaluations support Martinson's view that the plaintiff was not qualified for the FR-29

supervisory position because he was too narrowly focused on IT issues.  *Id.* at 13-14.  The

plaintiff's position as an EDP analyst focused exclusively on IT and Information Systems tasks

and the performance evaluations that praise the plaintiff's skills relate to the IT functions of his

job.  *Id.* at 14-15.

        The plaintiff has not demonstrated the type of "shifting rationale," or an after-the-fact

statement that is required to establish that the defendant's nondiscriminatory reason is a pretext

for discrimination.  *See Gutierrez*, 435 F. Supp. 2d at 68 (inferring a shifting rationale where the

plaintiff's supervisor had mentioned that it replaced the plaintiff because of her job performance,

yet, during a deposition, the plaintiff's supervisor stated that he had no concerns about the

plaintiff's work performance).  In the instant case, Martinson's view of the plaintiff's strength and

weaknesses has not changed over time and the plaintiff has not shown that Martinson offered

different or inconsistent explanations for the plaintiff's non-selection.  For example, although the evaluations praise the plaintiff's communication skills in the area of his IT specialty, such praise is not inconsistent with Martinson's concern that the plaintiff is unable to explain things in "non-technical" terms.  Def.'s Reply at 14.  And, the plaintiff's inability to communicate with a wider audience is directly related to the communication skills that are required of the FR-29 position.  Indeed, as stated *supra*, "the performance evaluation is a review of an employee's performance in [his] current position, while the process of selecting a person for a promotion involves a consideration of how that employee will perform in a different position."  *Anderson*, 406 F.3d at 272.  Accordingly, "the performance evaluation and the interview selection stage, which involves an analysis of how the applicant meets the core and functional competencies of the position that is open, are not interchangeable."  *Id.*  Because the plaintiff cannot demonstrate that the defendant has offered contradictory reasons for his non-selection, the plaintiff fails to establish a pretext for age discrimination.

## IV.  CONCLUSION

For the foregoing reasons, the court denies the defendant's motion to dismiss and for summary judgment.  An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 11th day of June, 2007.

RICARDO M. URBINA
United States District Judge

21