**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHARLES B. JONES,                               :
                                                :
                Plaintiff,                      :
                                                :       Civil Action No.:       04-1696 (RMU)
                v.                              :
                                                :       Document Nos.:          51, 52
BEN BERNANKE,[1] Chairman of                    :
The Board of Governors of the                   :
Federal Reserve System,                         :
                                                :
                Defendant.                      :

**MEMORANDUM OPINION**

**GRANTING THE DEFENDANT'S MOTION TO ALTER OR AMEND JUDGMENT;
FINDING AS MOOT THE DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT ON COUNTS III & IV**

## I. INTRODUCTION

The only claim left standing in this legal tug-of-war is the plaintiff's retaliation claim

based on a 2000 performance evaluation the plaintiff received while employed at the Federal

Reserve. Despite the court's previous denial of its motion for summary judgment regarding this

claim, the defendant, the Federal Reserve, requests that the court now revisit and extinguish the

plaintiff's retaliation claim. Specifically, the defendant argues that the court erred in not

addressing whether the supervisors responsible for drafting the performance evaluation had

knowledge of the plaintiff's protected activity – a necessary element of the plaintiff's prima facie

case. The plaintiff retorts that he did not need to establish a prima facie case provided the court

determines that the defendant possessed a retaliatory motive in drafting the performance

evaluation. Because the court overlooked the plaintiff's inability to establish that his supervisors

---

[1]     Pursuant to Federal Rule of Civil Procedure 25(d)(1), if a public officer named as a party to an
action in his official capacity ceases to hold office, the court will automatically substitute that
officer's successor.

had knowledge of the protected activity, the court cannot conclude that they acted with a

retaliatory motive.  Therefore, the court grants the defendant's motion to alter or amend its

judgment and dismisses the plaintiff's only remaining claim.


## II.  BACKGROUND

### A.  Factual History

The plaintiff, a certified public accountant, was born on May 30, 1948.  Am. Compl. ¶ 6.

He began working at the defendant's Division of Reserve Bank Operations and Payment

Systems in April 1991.  *Id.* ¶ 7.  In July 1993, the plaintiff transferred to the Division of Banking

Supervision and Regulation at a level FR-27.  *Id.* ¶ 8.

The plaintiff alleges that in March 1998, Michael Martinson, his then-supervisor, did not

promote him to a managerial position at the FR-29 level and instead selected a "woman in her

early thirties."  *Id.* ¶¶ 9-10.  The plaintiff suspected that his age or gender was a factor in his

nonselection, but he did not file a complaint with the Equal Employment Opportunity

Commission ("EEOC") because Martinson and another supervisor, William Ryback, assured him

that he would receive a one-level promotion.  *Id.* ¶¶ 11-12.

By September 1998, the plaintiff had not received a promotion.  *Id.* ¶ 13.  When he

inquired about the delay, Martinson informed him that there was "a policy against providing

individual promotions."  *Id.*  A more senior supervisor, Stephen Schemering, had apparently

instructed Ryback and Martinson "to be careful how many people we have at that level."  *Id.*

Nevertheless, Martinson again assured the plaintiff that he would be promoted "with the next

group of promotions."  *Id.*   These assurances continued through 1999, and based on these

assurances, the plaintiff did not pursue the matter with the defendant's EEOC office.  *Id.* ¶ 14.

In August 1999, Martinson sent the plaintiff abroad on a teaching assignment.  *Id.*  While he was away, a group of employees was promoted while another group received pay increases. *Id.*  The plaintiff, however, was not among those employees that were promoted or received pay increases.  *Id.*  When the plaintiff confronted Martinson about his failure to promote him, Martinson stated that he was unable to justify a promotion for the plaintiff because of "the limited nature of [the plaintiff's] work responsibilities."  *Id.* ¶ 15.  As a result, in November 1999 the plaintiff filed an informal charge with the defendant's EEOC office.  *Id.* ¶ 17.  The plaintiff then filed a formal complaint in January 2000 and remained involved in the EEOC process by requesting a hearing in September 2000 and conducting discovery and filing various motions. Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 11-14.

The plaintiff alleges that since filing the EEOC complaint, Martinson "unjustifiably" downgraded the plaintiff's performance evaluations from "outstanding" in 1999 to "commendable" in 2000, 2001, 2002 and 2003.  *Id.* ¶ 18.  The plaintiff further alleges that the evaluations inaccurately characterize the plaintiff's performance and have a negative impact on his ability to be promoted and to receive salary increases.  *Id.* ¶¶ 18-19.

**B.  Procedural History**

The plaintiff filed a complaint in this court on October 4, 2004.  The plaintiff alleged that his supervisors unlawfully retaliated against him by lowering his performance ratings in 2000, 2001, 2002 and 2003 in violation of Title VII, 42 U.S.C. §§ 2000e-1 *et seq.* and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 633a *et seq.*  On June 14, 2005, the defendant filed a motion to dismiss and for summary judgment.  Def.'s First Mot. for Summ. J. ("Def.'s First Mot.").  While awaiting the court's ruling on this motion, the plaintiff filed a motion to amend the complaint.  Pl.'s Mot. to Amend Compl.  On December 13, 2005, the court

granted summary judgment for the defendant on all of the counts except the plaintiff's retaliation claim based on his 2000 performance evaluation.  Mem. Op. (Dec. 13, 2005).

Specifically, the court determined that the plaintiff established a prima facie case for retaliation based on the 2000 performance evaluation because the plaintiff engaged in protected activity only five weeks prior.  *Id.* at 11.  After establishing that the defendant set forth a legitimate, nondiscriminatory justification for the 2000 performance evaluation – the plaintiff's "assignments required additional work by managers or other analysts, and in other instances, plaintiff did not complete assignments" – the court proceeded to evaluate whether the plaintiff proffered sufficient evidence for a reasonable juror to conclude that the 2000 performance evaluation was downgraded for a discriminatory reason.  *Id.* at 12-13.  Based on the plaintiff's prima facie case; a supervisor's statement that the plaintiff was "old school"; the plaintiff's assertion that he was never given some of the assignments he allegedly failed to complete; and the plaintiff's assertion that "he and his supervisor agreed that he need not complete a particular assignment," the court concluded that the plaintiff had satisfied his burden of proof and denied the defendant's motion for summary judgment as to this claim.  *Id.* at 12-13.

Less than ten days after the court issued this Memorandum Opinion, the defendant filed a motion to alter or amend the court's judgment because the court "failed to address the complete absence of any evidence that the supervisors who decided on plaintiff's 2000 performance evaluation" had knowledge of the plaintiff's protected activity, *i.e.*, requesting an EEOC hearing in September 2000.  Def.'s Mot. to Alter or Amend J. at 2.  While this motion was pending, the court granted the plaintiff's motion to amend the complaint, Mem. Op. (Aug. 29, 2006), thereby denying without prejudice all pending motions pertaining to the original complaint, Mem. Op. (June 11, 2007) at 4 n.3.  The defendant then filed a motion to dismiss and for summary

judgment as to the additional counts charged in the plaintiff's amended complaint.  Def.'s Second Mot. for Summ. J.  The court granted this motion and allotted thirty days for the defendant to file a motion addressing the retaliation claim based on the 2000 performance evaluation.[2]  Mem. Op. (June 11, 2007) at 4 n.3.

Exactly thirty days later, the defendant submitted a third motion for summary judgment and a renewed motion to alter or amend the court's decision as to the plaintiff's retaliation claim based on his 2000 performance evaluation.  Def.'s Third Mot. for Summ. J. and Renewed Mot. to Alter or Amend J. ("Def.'s Mot.").  With briefing complete, the court now turns to the defendant's motions.

### III.  ANALYSIS

Because the court has previously denied the defendant's motion for summary judgment on the plaintiff's retaliation claim based on his 2000 performance evaluation, the court addresses the defendant's renewed motion to alter or amend the court's judgment rather than the defendant's motion for summary judgment.  Proceeding in this fashion prevents the defendant from taking a "second bite at the apple," *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998) (noting that "Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple'"), and allows the court to "police inconsistency." *PNC Fin. Serv. Group, Inc. v. C.I.R.*, 503 F.3d 119, 126 (D.C. Cir. 2007) (observing that "[i]consistency is the antithesis of the rule of law" (quoting *LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C. Cir. 1996) (en banc))).

---

[2]     Although the court stated that the defendant had thirty days to "address counts III and IV" of the plaintiff's amended complaint, these counts are identical to counts III and IV in the plaintiff's original complaint.  *Compare* Compl. ¶¶ 12-17 *with* Am. Compl. ¶¶ 26-31.  Thus, in light of the court's earlier decisions, the plaintiff's only remaining claim is his retaliation claim based on the 2000 performance evaluation.

### A.  Legal Standard for a Retaliation Claim

To prevail on a claim of retaliation, a plaintiff must follow the *McDonnell Douglas* framework.  *Morgan v. Fed. Home Loan Mortgage Corp.*, 328 F.3d 647, 651 (D.C. Cir. 2003) (applying the *McDonnell Douglas* framework to a Title VII retaliation claim); *Duncan v. Wash. Metro. Area Transit Auth.*, 214 F.R.D. 43, 49-50 & n.8 (D.D.C. 2003) (applying the *McDonnell Douglas* framework to a Rehabilitation Act retaliation claim).  The Supreme Court explained the framework as follows:

> First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of [ retaliation].  Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, [non-retaliatory] reason for the employee's rejection" . . . .  Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for [retaliation] . . . .  The ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times with the plaintiff.

*Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981) (internal citations omitted) (quoting *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)).

To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action.  *Burlington N. & Santa Fe Ry. Co. v. White*, 126 S. Ct. 2405, 2415-16 (2006); *see also Scott v. Kempthorne*, 2006 WL 1980219, at *3 (10th Cir. July 17, 2006).  The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive."  *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

With regard to the first prong of the plaintiff's prima facie case of retaliation, statutorily protected activities include the filing of EEOC complaints. *Forkkio v. Powell*, 306 F.3d 1127, 1131-32 (D.C. Cir. 2002).  As for the second prong, "[t]he anti-retaliation provision seeks to . . . prohibit[] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers.  And normally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence." *Burlington N.*, 126 S. Ct. at 2415 (citations omitted).  Additionally, "the significance of any given act of retaliation will often depend upon the particular circumstances.  Context matters." *Id.*  Finally, under the third prong, the plaintiff may establish a causal connection "by showing that the employer had knowledge of the employee's protected activity, and that the [retaliatory] personnel action took place shortly after that activity." *Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)).  To qualify as a causal connection, however, the temporal proximity between the employer's knowledge of the protected activity and the adverse personnel action must be "very close." *Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and that a 20-month period suggests "no causality at all").

### B.  Legal Standard for Rule 59(e) Motion

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed within 10 days of the entry of the judgment at issue. FED. R. CIV. P. 59(e); *see also Mashpee Wamponoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1098 (D.C. Cir. 2003) (stating that a Rule 59(e) motion "must be filed within 10 days of the challenged order, not including weekends, certain specified national holidays (including Christmas Day and

New Year's Day), or any other day appointed as a holiday by the President").  While the court has considerable discretion in ruling on a Rule 59(e) motion, the reconsideration and amendment of a previous order is an unusual measure.  *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (*per curiam*); *McDowell v. Calderon*, 197 F.3d 1253, 1255 (9th Cir. 1999).  Rule 59(e) motions "need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear legal error or prevent manifest injustice."  *Ciralsky v. Cent. Intelligence Agency*, 355 F.3d 661, 671 (D.C. Cir. 2004) (quoting *Firestone*, 76 F.3d at 1208).  Moreover, "[a] Rule 59(e) motion to reconsider is not simply an opportunity to reargue facts and theories upon which a court has already ruled," *New York v. United States*, 880 F. Supp. 37, 38 (D.D.C. 1995), or a vehicle for presenting theories or arguments that could have been advanced earlier.  *Kattan v. District of Columbia*, 995 F.2d 274, 276 (D.C. Cir. 1993); *W.C. & A.N. Miller Cos. v. United States*, 173 F.R.D. 1, 3 (D.D.C. 1997).

### C.  The Defendant's Motion is Timely

As a threshold matter, the plaintiff argues that the court should deny the defendant's renewed motion to alter or amend the court's judgment because it is untimely.  Pl.'s Opp'n to Def.'s Mot. ("Pl.'s Opp'n") at 7-8.  Federal Rule of Civil Procedure 59(e) requires that motions to alter or amend a judgment be filed within ten days after entry of the judgment.  FED. R. CIV. P. 59(e).  The defendant met this requirement by filing its original motion to alter or amend the judgment within ten days after the court issued its opinion addressing the defendant's first motion for summary judgment.  *See* Mem. Op. (Dec. 13, 2005) and Def.'s Mot. to Alter or Amend (Dec. 21, 2005).

The court later denied without prejudice the defendant's motion to reconsider because the plaintiff's amended complaint superceded the first complaint. Mem. Op. (June 11, 2007) at 4 n.3. The amended complaint, however, re-alleges the counts in the first complaint. *Compare* Compl. ¶¶ 12-17 *and* Mem. Op. (Dec. 13, 2005) *with* Am. Compl. ¶¶ 26-31. Therefore, the court's earlier decision dismissing all but one of the claims in the original complaint also bars all but one of the re-alleged claims in the amended complaint. *See Arizona v. California*, 460 U.S. 605, 618 (1983) (holding that the law-of-the-case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in the subsequent stages of the same case").

Importantly then, the plaintiff's only surviving claim from the original complaint – the retaliation claim based on the 2000 performance evaluation – remains alive in the amended complaint. *Id.* Consequently, the defendant's motion requesting that the court alter or amend its earlier decision denying the defendant's motion for summary judgment as to this retaliation claim applies with equal force to the amended complaint. And in light of the court's most recent Memorandum Opinion dismissing all of the new claims alleged in the amended complaint, the retaliation claim is the only claim left for the court's consideration. *See* Mem. Op. (June 11, 2007) (dismissing counts I and II in the amended complaint); *see also* Mem. Op. (Dec. 13, 2005) (effectively dismissing counts III and IV in the amended complaint, except for the retaliation claim based on the 2000 performance evaluation). Finally, because the defendant originally filed a timely motion to reconsider and then timely renewed this motion after the court provided the

defendant notice that its original motion to reconsider was dismissed without prejudice, the court

does not consider the defendant's motion untimely.[3]

### D.  The Court Grants the Defendant's Renewed Motion to Alter or Amend the Court's Judgment

The defendant contends that the court, in its Memorandum Opinion issued December 13,

2005, erred in concluding that the plaintiff had established a prima facie case because the court

did not address whether the individuals responsible for the plaintiff's performance evaluation had

knowledge of the plaintiff's protected activity – an essential element of the prima facie case.

Def.'s Mot. at 7.  By way of incorporating its original motion to alter or amend the court's

judgment, the defendant argues that the plaintiff has the burden of showing that "those capable of

making employment decisions had knowledge of the protected activity" and that the plaintiff

presents no such evidence.  Def.'s Mot. to Alter or Amend J. at 2.  The plaintiff responds that the

protected activity in this case was a request for a hearing after the filing of a formal EEOC

complaint and that he established his prima facie case because there is "no requirement to show

awareness of each and every subsequent act of participation in the EEO process."  Pl.'s Opp'n at

4-5.  Instead, the plaintiff contends that the prima facie case merely requires "enough evidence to

permit an inference of retaliatory motive."  Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 7.

Even so, the plaintiff adds that the defendant "has not come up with a single fact that was not

---

[3]       The plaintiff contends that Rule 59(e) allots the defendant only ten days to *renew* his motion to reconsider.  Pl.'s Opp'n at 8.  The plaintiff further avers that this ten-day period begins on the date the defendant knows or should know that its original motion to reconsider has been dismissed without prejudice and that the court "has no discretion to extend this time."  *Id.*  But Rule 59(e) does not prescribe a period for renewing a motion to reconsider, and given the defendant's compliance with the time limits set forth by the federal rules and by the court, the plaintiff's argument is unconvincing.  FED. R. CIV. P. 59(e).  Moreover, even if the defendant's motion was untimely, the court would address the defendant's motion as a motion to reconsider pursuant to Rule 60(b).  *Hall v. C.I.A.*, 437 F.3d 94, 98 (D.C. Cir. 2006) (approving of a district court's treatment of an untimely motion to reconsider under Rule 59(e) as a motion under Rule 60(b)).

extensively briefed by the parties and considered by the [c]ourt in the original summary

judgment decision," and therefore, the court already "implicitly rejected [the defendant's] worn

argument that decision-makers did not know about the September hearing request."  Pl.'s Opp'n

at 11-12.

### 1.  The Plaintiff Failed to Establish that his Supervisors had Knowledge of the Protected Activity

The plaintiff's argument that the court implicitly rejected the defendant's argument that

the plaintiff's supervisors did not have knowledge of the protected activity is incorrect.

Although the issue of whether the supervisors had knowledge was before the court when it ruled

on the defendant's first motion for summary judgment, the court did not explicitly decide

whether the individuals responsible for the plaintiff's 2000 performance evaluation knew about

the plaintiff's request for an EEOC hearing five weeks earlier.  *Compare* Def.'s Reply to Pl.'s

Opp'n to Def.'s First Mot. 4-5 *and* Pl.'s Sur-reply to Def.'s First Mot. at 3-6 *with* Mem. Op.

(Dec. 13, 2005) at 11.  Indeed, the court premised its conclusion that "the plaintiff established the

causal link necessary for a prima face case of retaliation" solely on temporal proximity, *i.e.*, "the

plaintiff received his November 2000 evaluation five weeks after his protected activity."  Mem.

Op. (Dec. 13, 2005) at 11.

The court revisits this conclusion because the one letter proffered by the plaintiff that

provided the defendant with notice of the hearing request was sent to the defendant's EEO

Programs Director, Sheila Clark, Pl.'s Opp'n to Def.'s First Mot., Ex. 24, and this is insufficient

to impute knowledge to the plaintiff's direct supervisors, *Hazward v. Runyon*, 14 F. Supp. 2d

120, 124 n.9 (D.D.C. 1998) (noting that evidence of one official within the defendant's

organization receiving notice of a protected activity without more does not lead to a reasonable

inference that other officials also had notice of the protected activity).  Accordingly, one cannot

necessarily infer from the court's decision that it "rejected [the defendant's] worn argument that decision makers did not know about the September hearing request."

In the alternative, the plaintiff proposes that his supervisors did not need to know of the hearing request because their knowledge of the formal EEOC complaint, filed in January 2000, coupled with the totality of the circumstances is sufficient "to permit an inference of retaliatory motive." Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 7. The plaintiff principally relies on *Holcomb v. Powell* to support this proposition, but this reliance is misplaced. 433 F.3d 889 (D.C. Cir. 2006). In that case this Circuit held that Holcomb met her burden of establishing a prima facie case by alleging a continuous adverse employment action before which and during which she engaged in protected activities. *Id.* at 903. That is, Holcomb filed a formal EEOC complaint in January 2000, and three months later the defendant assigned Holcomb to a "primarily clerical" position well below her capabilities as a program specialist. *Id.* at 894. Holcomb remained in this position for over two years despite her objections to the work. *Id.* The Circuit determined that although the plaintiff's "January 2000 complaint would not establish the 'close temporal proximity' . . . required to give rise to an inference of causation," a causal connection existed because the plaintiff engaged in protected activity *while* she "languished in her [] netherworld." *Id.* at 903. Notably, this protected activity included letters sent to the defendant the month before and the month of her assignment to this "netherworld," which complained that proper EEOC procedures were not being followed.[4] *Id.* at 894 n.1.

---

[4]      She also wrote several letters to the EEOC, copying the defendant on many of them, in July, August and December 2000 and in January, March and May 2001 alleging similar procedural deficiencies. *Holcomb v. Powell*, 433 F.3d 889, 894 n.1 (D.C. Cir. 2006). The plaintiff then filed a complaint in July 2001 stemming from the first formal EEOC complaint, and she filed a second EEOC complaint in April 2002 alleging that her employer practiced discrimination by deliberately withholding duties to the detriment of her career. *Id.* at 894.

The instant case is markedly different because here the plaintiff alleges a discrete, rather than a continuous, adverse employment action.  Am. Compl. ¶¶ 27, 30.  And while the plaintiff would have the court "consider all the subsequent conduct by [the plaintiff] and actions by his supervisors" and infer a retaliatory motive, the court declines to do so.  Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 13.  First, the court notes that the Circuit only referenced the protected activities that occurred while Holcomb remained "languishing in her [] netherworld," implicitly treating her employer's repeated denials to assign her work on par with her ability as adverse employment actions.  *Holcomb*, 433 F.3d at 903 (holding that "[b]ecause Holcomb repeatedly engaged in protected activity during the period when she also experienced reduced work assignments, we believe she has . . . made out a prima facie case of retaliation").  Second, the Circuit arguably did not need to infer a retaliatory motive from the totality of the circumstances because Holcomb engaged in protected activity the month before and the month of her assignment to this purported "netherworld."  *Id.* at 894 n.1.  Even so, the third reason the plaintiff's argument fails is due to his unconvincing attempt to compare his alleged "professional purgatory" with Holcomb's "netherworld."  Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 8-9.  By the plaintiff's own admission, the defendant stripped him of his "primary job duties" before the plaintiff spoke with an EEO specialist and filed an EEOC Complaint.[5]  Pl.'s Opp'n to Def.'s First Mot., Ex. 1 ¶¶ 28-30, 39-40.  Thus, the court treats the plaintiff's receipt of the 2000 performance evaluation as a discrete act – requiring the plaintiff to demonstrate a retaliatory motive based on a protected activity in close temporal proximity to the adverse employment

---

[5]     The plaintiff presents inconsistent statements as to the timing of his move "from a window office to a windowless office."  Pl.'s Opp'n to Def.'s First Mot., Exs. 1 ¶ 30 & 31 ¶ 9.

action – and does not infer a retaliatory motive from the totality of the circumstances.[6] *See Singletary v. District of Columbia*, 351 F.3d 519, 524-25 (D.C. Cir. 2003) (instructing the district court to consider protected acts after the filing of an EEOC complaint in determining whether a plaintiff can establish the close temporal proximity necessary to prove causation).

### 2. The Plaintiff Cannot Prove a Retaliatory Motive Without First Establishing that his Supervisors had Knowledge of the Protected Activity

The plaintiff argues that failure to establish a prima facie case is not fatal to his claim provided the defendant has set forth a legitimate, nondiscriminatory reason for the adverse employment action. Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 6-7. The plaintiff relies on this Circuit's decision in *George v. Leavitt*, in which the Circuit recognized the *McDonnell Douglas* burden shifting analysis set forth by the Supreme Court. The Circuit stated, "[f]irst the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination," but it went on to explain that this "framework was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination." *George v. Leavitt*, 407 F.3d 405, 411 (D.C. Cir. 2005) (internal quotations omitted) (quoting *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)). With this flexibility in mind, the plaintiff maintains that this court's ultimate conclusion that the plaintiff "has offered evidence from which a reasonable jury could conclude that the defendant's criticism in the 2000

---

[6]     The plaintiff also argues that the January 2000 filing of the EEOC complaint is sufficient to establish a prima facie case because a close temporal proximity is not necessary when the defendant did not have a prior opportunity to retaliate against the plaintiff. Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 12. The court rejects this argument because the plaintiff fails to indicate why other adverse employment actions such as demotions, reduction in responsibility or other "materially adverse consequences affecting the terms, conditions, or privileges of employment or future employment opportunities such that a reasonable trier of fact could find objectively tangible harm" were not available to the defendant before the 2000 performance evaluation. *Forkkio v. Powell*, 306 F.3d 1127, 1131 (D.C. Cir. 2002) (citing *Brown v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).

performance appraisal is not based on his actual performance" should not be disturbed.  Mem. Op. (Dec. 13, 2005) at 12; Pl.'s Opp'n to Def.'s Mot. to Alter or Amend J. at 7.

The court, however, revisits its conclusion because it was at least partially based on the incorrect assumption that the plaintiff proved its prima facie case.  Mem. Op. (Dec. 13, 2005) at 12 (observing that "[i]n deciding whether a reasonable jury could conclude that the plaintiff's 2000 performance evaluation was discriminatory, the court considers whether the jury could infer discrimination from the plaintiff's prima facie case").  One part of that prima facie case – knowledge of the protected activity – is a critical component of the court's analysis of retaliation claims absent direct evidence of a retaliatory motive.  *Mitchell*, 759 F.2d at 86 (holding that "[t]he causal connection component of the prima facie case may be established by showing that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity").  In fact, "there can be no retaliatory intent unless there is knowledge."  *Downey v. Isaac*, 622 F. Supp. 1125, 1132 (D.D.C. 1985); *see Breeden*, 532 U.S. at 273 (noting that "[t]he cases that accept mere temporal proximity between *an employer's knowledge of protected activity* and an adverse employment action as sufficient evidence to establish a prima facie case uniformly hold that the temporal proximity must be 'very close'" (emphasis added)); *see also Ambrose v. Township of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002) (holding that "[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct").  Without establishing a retaliatory motive, the plaintiff's retaliation claim cannot survive summary judgment.  *See Vickers v. Powell*, 493 F.3d 186, 195-96 (D.C. Cir. 2007) (affirming a district court's decision to dismiss a retaliation claim for failing to present sufficient evidence for a jury to find a retaliatory motive).  Accordingly, because, as discussed *supra*, the plaintiff failed

to establish that his supervisors had knowledge of the protected activity, the court reverses

course and grants the defendant's renewed motion to alter or amend the court's judgment,

thereby dismissing the plaintiff's retaliation claim based on the 2000 performance evaluation.

*See Laboy v. O'Neill*, 2002 WL 1050416, at *1 (D.C. Cir. Mar. 13, 2002) (affirming a district

court's decision to dismiss a retaliation claim "because the official responsible for ordering

appellant's termination was unaware of [the plaintiff's] prior EEO activity"); *Hazward*, 14 F.

Supp. 2d at 124-25 (dismissing a plaintiff's retaliation claim for failing to establish that the

supervisor responsible for making the adverse employment action had knowledge of the

protected activity).


## IV.  CONCLUSION

For the foregoing reasons, the court grants the defendant's renewed motion to alter or

amend judgment and finds as moot the defendant's motion for summary judgment as to counts

III and IV.  An order consistent with this Memorandum Opinion is separately and

contemporaneously issued this 10th day of March, 2008.


RICARDO M. URBINA
United States District Judge