UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHARLES B. JONES, : | |
| : | |
| Plaintiff, : | |
| : | Civil Action No.: 04-1696 (RMU) |
| v. : | |
| : | Re Document Nos.: 62, 64 |
| BEN BERNANKE, Chairman of : | |
| The Board of Governors of the : | |
| Federal Reserve System, : | |
| : | |
| Defendant. : | |

## MEMORANDUM OPINION

GRANTING THE PLAINTIFF'S MOTION FOR LEAVE TO SUPPLEMENT THE COMPLAINT;
DENYING WITHOUT PREJUDICE THE PLAINTIFF'S MOTION FOR DISCOVERY

## I. INTRODUCTION

This matter is before the court on the plaintiff's motion for leave to supplement his complaint and motion for discovery. The plaintiff, a former employee of the Federal Reserve, commenced this action alleging that the defendant discriminated against him on the basis of his age and gender and retaliated against him for participating in protected activity, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 633a *et seq.*, and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-1 *et seq.* The court granted summary judgment to the defendant on all of the plaintiff's claims. On appeal, the Circuit affirmed the dismissal of the plaintiff's discrimination claims but remanded the plaintiff's retaliation claims for further proceedings. The plaintiff now moves to supplement his complaint to add claims of additional retaliatory treatment and constructive discharge. In addition, the plaintiff seeks discovery pursuant to Federal Rule of Civil Procedure 56(f).

Because the plaintiff's proposed supplemental claims are not futile and because permitting supplementation would not significantly prejudice the defendant, the court grants the plaintiff's motion for leave to supplement the complaint. The court, however, denies without prejudice the plaintiff's Rule 56(f) motion for discovery as that motion is premature.

## II.  FACTUAL & PROCEDURAL BACKGROUND

The factual background and procedural history underlying this case are detailed in the prior decisions of this court and the Circuit. *See, e.g.*, Mem. Op. (Mar. 10, 2008) at 2-5; *Jones v. Bernanke*, 550 F.3d 670, 672-74 (D.C. Cir. 2009). By way of brief background, the plaintiff alleges that in March 1998, Michael Martinson, his then-supervisor, did not promote him to a managerial position and instead selected a younger woman for the position. Am. Compl. ¶¶ 9-10. The plaintiff suspected that his age or gender was a factor in his non-selection, but did not file a complaint with the Equal Employment Opportunity Commission ("EEOC") because Martinson and another supervisor, William Ryback, assured him that he would receive a one-level promotion. *Id.* ¶¶ 11-12. After the promised promotion did not materialize, in November 1999, the plaintiff filed an informal charge with the defendant's EEOC office. *Id.* ¶ 17. The plaintiff then filed a formal administrative complaint in January 2000. *See* Def.'s First Mot. for Summ. J., Ex. 4.

The plaintiff alleges that after he filed the administrative complaint, Martinson unjustifiably downgraded his performance evaluations from "outstanding" in 1999 to "commendable" in 2000, 2001, 2002 and 2003. Am. Compl. ¶ 18. The plaintiff contends that these "false" and "disparaging" performance evaluations were given in retaliation for his participation in protected EEOC activity. *Id.* ¶ 27.

The plaintiff filed his original complaint in this court on October 4, 2004, alleging that the defendant unlawfully retaliated against him in violation of Title VII and the ADEA by giving him downgraded performance evaluations for the years 2000, 2001, 2002 and 2003.  *See generally* Compl.  On December 13, 2005, the court granted summary judgment to the defendant on all of the plaintiff's claims except for the one based on his performance evaluation for the year 2000.  *See generally* Mem. Op. (Dec. 13, 2005).

On August 29, 2006, the court granted the plaintiff's motion to amend his complaint to assert a disparate treatment claim under Title VII and the ADEA based on his non-selection for the manager position.  *See generally* Mem. Op. (Aug. 29, 2006).  In a memorandum opinion dated June 11, 2007, the court granted the defendant's motion for summary judgment on his non-selection claim and allotted thirty days for the defendant to file a motion addressing the retaliation claim based on the 2000 performance evaluation.  *See generally* Mem. Op. (June 11, 2007).  On March 10, 2008, the court granted summary judgment to the defendant on the plaintiff's remaining retaliation claim based on his 2000 performance evaluation, thus disposing of all of the plaintiff's claims.  *See generally* Mem. Op. (Mar. 10, 2008).

On appeal, the Circuit affirmed the court's dismissal of the plaintiff's disparate treatment claim, but reversed the court's ruling on the plaintiff's claim regarding his 2000 performance evaluation, holding that the plaintiff had offered sufficient evidence to permit a reasonable jury to believe that the performance evaluation constituted retaliation.  *Jones*, 557 F.3d at 674, 679-81.  In addition, the Circuit reversed the court's ruling on the plaintiff's claims based on his 2001, 2002 and 2003 performance evaluations and remanded those claims for further proceedings.  *Id*. at 681.

Following remand, the plaintiff filed this motion to supplement the complaint under Federal Rule of Civil Procedure 15(d). *See generally* Pl.'s Mot. to Supplement Compl. The plaintiff seeks to add a claim regarding the performance evaluation he received in 2004, which assigned the plaintiff a marginal rating in several performance categories and which the plaintiff contends was retaliatory like the performance evaluations given in 2000, 2001, 2002 and 2003. *See id.* at 8-13. In addition, the plaintiff seeks to add a claim for constructive discharge, alleging that the defendant's retaliatory behavior forced him to resign from his position in August 2005. *See id.*

On June 29, 2009, the plaintiff filed a motion for discovery. *See generally* Pl.'s Mot. for Discovery. Through this motion, the plaintiff seeks to augment the discovery he obtained at the administrative level under Federal Rule of Civil Procedure 56(f), which authorizes discovery to permit a party to obtain facts essential to justify its opposition to a motion for summary judgment. *See generally id.*

Both motions are now ripe. *See generally* Def.'s Opp'n to Pl.'s Mot. to Supplement Compl. & Pl.'s Mot. for Discovery ("Def.'s Opp'n"); Pl.'s Reply in Support of Mot. to Supplement Compl. ("Pl.'s Reply"). The court now turns to an analysis of the applicable legal standards and the parties' arguments.

### III. ANALYSIS

**A. The Court Grants the Plaintiff's Motion for Leave to Supplement the Complaint**

**1. Legal Standard to Supplement a Pleading Pursuant to Rule 15(d)**

Federal Rule of Civil Procedure 15(d) authorizes the court, "upon reasonable notice and upon such terms as are just," to permit a party to serve a supplemental pleading setting forth

events which have occurred since the filing of the original complaint.  FED. R. CIV. P. 15(d).  The rule's basic aim is "to make pleadings a means to achieve an orderly and fair administration of justice."  *Gomez v. Wilson*, 477 F.2d 411, 417 (D.C. Cir. 1973) (quoting *Griffin v. County School Bd.*, 377 U.S. 218, 227 (1964)).  Supplements under Rule 15(d) always require leave of the court, and should be "freely granted when doing so will promote the economic and speedy disposition of the entire controversy between the parties, will not cause undue delay or trial inconvenience, and will not prejudice the rights of any of the other parties to the action."  *Hall v. CIA*, 437 F.3d 94, 100 (D.C. Cir. 2006) (citing *United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002)); *Wildearth Guardians v. Kempthorne*, 592 F. Supp. 2d 18, 23 (D.D.C. 2008) (noting that leave to supplement under Rule 15(d) "should be freely given unless there is a good reason, such as futility, to the contrary") (quoting *Willoughby v. Potomac Elec. Power Co.*, 100 F.3d 999, 1003 (D.C. Cir. 1996)).  The court has broad discretion in determining whether to allow supplemental pleadings in the interests of judicial economy and convenience.  *Wildearth Guardians*, 592 F. Supp. 2d at 23.

### 2.  The Parties' Arguments

The plaintiff seeks leave to supplement his complaint to add a retaliation claim based on his 2004 performance evaluation and a claim for constructive discharge.  *See generally* Pl.'s Mot. to Supplement Compl.  He asserts that the proposed claim regarding his 2004 performance evaluation is merely a continuation of the claims concerning the retaliatory performance evaluations he received in 2000, 2001, 2002 and 2003.  *Id*. at 8.  Likewise, the plaintiff contends that his constructive discharge claim is "connected" to the original complaint in that his forced resignation was the result of the defendant's ongoing retaliatory performance evaluations, which precluded him from any further career advancement.  *Id*. at 9.  Given the fact that the proposed

supplemental claims represent a continuation of the claims raised in the complaint, the plaintiff argues, the defendant can claim neither surprise nor prejudice and the court should permit supplementation.[1]  *Id.* at 12.

The defendant contends that the court should deny the plaintiff's motion to supplement as futile.  *See generally* Def.'s Opp'n.  The defendant argues that the plaintiff failed to exhaust his administrative remedies for either claim, such that those claims would be subject to dismissal if the court granted leave to supplement.  *Id.* at 6-9.  In addition, the defendant contends that the plaintiff has failed to state a claim for retaliation or constructive discharge because he has not asserted a set of allegations that would plausibly support either claim.  *Id.* at 3-5, 9-10.  Lastly, the defendant contends that allowing the plaintiff to supplement his complaint at this stage of the litigation would result in prejudice to the defendant.  *Id.* at 10-11.

The plaintiff responds that he was not required to exhaust his administrative remedies for either proposed supplemental claim, noting that the court had previously ruled that exhaustion is not required with respect to retaliation claims based on conduct arising after the filing of the administrative complaint.  Pl.'s Reply in Support of Mot. to Supplement Compl. ("Pl.'s Reply") at 7 (citing Mem. Op. (Dec. 13, 2005) at 5).  In addition, the plaintiff contends that both his retaliation claim premised on the 2004 performance evaluation and his constructive discharge claim have the requisite plausibility to withstand a motion to dismiss, and therefore are not futile. *Id.* at 1-6, 11-16.

The court addresses each of the disputed issues – exhaustion of administrative remedies, failure to state a claim and prejudice – in turn.

---

[1]  The plaintiff also notes that trial has not yet been scheduled in this case.  Pl.'s Mot. to Supplement Compl. at 12.

### a. The Administrative Exhaustion Requirement Does Not Render the Plaintiff's Proposed Supplemental Claims Futile

Turning first to the exhaustion issue, the court notes that before commencing a Title VII or ADEA suit in the district court, a plaintiff must exhaust his or her remedies at the administrative level by asserting his claims in an administrative complaint. 42 U.S.C. § 2000e-16(c); 29 U.S.C. § 633a(b). Dismissal results when a plaintiff fails to exhaust his or her administrative remedies. *Rann v. Chao*, 346 F.3d 192, 194-95 (D.C. Cir. 2003) (affirming the trial court's dismissal of the plaintiff's ADEA claim for failure to exhaust administrative remedies); *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003) (affirming the dismissal of the plaintiff's claim because "timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government").

As the plaintiff points out, this court held in a prior decision in this case that "a plaintiff need not exhaust administrative remedies to file a retaliation claim in court." Mem. Op. (Dec. 13, 2005) at 5-6 (citing *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 178 (D.D.C. 2005)). Since the entry of that decision, however, this court has had occasion to revisit this issue in other cases. *See, e.g.*, *Lewis v. District of Columbia*, 535 F. Supp. 2d 1, 6-8 (D.D.C. 2008); *Jones v. Univ. of D.C.*, 505 F. Supp. 2d 78, 84 (D.D.C. 2007). As noted therein, several courts in this district have interpreted the Supreme Court's ruling in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002) as requiring a plaintiff to separately exhaust his or her administrative remedies for every discrete act of discrimination or retaliation, regardless of whether the claims are "like or reasonably related" to claims contained in the administrative complaint. *See, e.g.*, *Lewis*, 535 F. Supp. 2d at 7 (citing cases). The court observed, however, that at least one court in this district has adopted a narrower reading of *Morgan* in the context of retaliation claims. *See id.* (citing *Hazel v. Wash. Metro. Area Transit Auth.*, 2006 WL 3623693,

7

at *8 (D.D.C. Dec. 4, 2006)).  Relying on a post-*Morgan* decision in the Eighth Circuit, the *Hazel* court held that separate exhaustion is not required for acts of retaliation occurring after the filing of an administrative complaint that would have come within the "scope of any investigation that reasonably could have been expected to result from [the] initial [administrative] charge of discrimination."  *Hazel*, 2006 WL 3623693, at *8 (citing *Wedow v. City of Kansas City, Mo.*, 442 F.3d 661, 674 (8th Cir. 2006)).

This court has since adopted the reasoning of *Hazel* and *Wedow*, holding that if the allegations underlying the plaintiff's retaliation claims "were of a like kind to the retaliatory acts alleged in the EEOC charge, which were specified to be of an ongoing and continuing nature," a plaintiff's failure to separately exhaust his or her administrative remedies will not serve as a bar to suit, as those claims would have come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint.  *Smith-Thompson v. Rodriguez*, 2009 WL 3069666, at *11 (D.D.C. Sept. 28, 2009) (quoting *Wedow*, 442 F.3d at 673) (internal citation omitted); *see also Hairston v. Tapella*, 2009 WL 3379008, at *7 (D.D.C. Oct. 21, 2009) (observing that "[a] more recent view is that acts of alleged retaliation occurring after an EEOC charge is filed need not be separately exhausted where they necessarily would have come within the 'scope of any investigation that reasonably could have been expected to result'" from the administrative complaint) (quoting *Hazel*, 2006 WL 3623693, at *8)); *cf. Jones v. Calvert Group, Ltd.*, 551 F.3d 297, 304 (4th Cir. 2009) (vacating summary judgment for the employer because the plaintiff's retaliation claim related to allegations asserted in the administrative complaint and noting that *Morgan* does not require a different result); *Vasquez v. County of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2003) (holding after *Morgan* that the court's jurisdiction extends to "all claims of discrimination that fall within the scope of the EEOC's

actual investigation or an EEOC investigation that could reasonably be expected to grow out of the charge").

With these principles in mind, the court turns to the plaintiff's proposed retaliation claim premised on his poor performance evaluation in 2004. The 2004 performance evaluation is plainly "of a like kind" to the retaliatory acts asserted at the administrative level regarding the negative performance evaluations he received in 2000, 2001, 2002 and 2003. *See* Def.'s 1st Mot. for Summ. J., Ex. 9A (EEOC Final Agency Decision) at 6-8 (granting the defendant's motion for summary judgment on the plaintiff's retaliation claims premised on his 2000, 2001, 2002 and 2003 performance evaluations). Furthermore, in his first motion to amend his administrative complaint, filed with the EEOC in June 2002, the plaintiff requested leave to assert claims concerning, *inter alia*, the "retaliatory performance evaluations" he received in 2000 and 2001, which he described as "part of the *continuing* age and sex discrimination and retaliation against Mr. Jones by the Federal Reserve." Def.'s 1st Mot. for Summ. J., Ex. 7 at 3 (emphasis added).[2] Thus, the plaintiff expressly averred at the administrative level that negative performance evaluations were part of a continuing pattern of retaliation, as required to satisfy the second prong of the *Wedow* standard. *See Wedow*, 442 F.3d at 673. Accordingly, the court holds that the plaintiff's failure to separately exhaust his administrative remedies with respect to his claim regarding his 2004 performance evaluation does not render that proposed retaliation claim futile. *See id*.

Likewise, the plaintiff's constructive discharge claim arises out of the negative performance evaluations that were adjudicated at the administrative level. Pl.'s Mot. to Supplement Compl., Ex. 1 (Proposed Supplemental Compl.) ¶¶ 30-32. More specifically, the

---

[2] In December 2002, the EEOC administrative judge granted the plaintiff's motion to amend in relevant part. Pl.'s Opp'n to Def.'s First Mot. for Summ. J., Ex. 27 at 5.

plaintiff alleges that the defendant "constructively discharged [him] in retaliation for his EEO activity when it continued to present him with false evaluations from 2000 through 2004 in violation of [the ADEA]." *Id.* ¶ 31.  Thus, like the proposed retaliation claim premised on the plaintiff's 2004 performance evaluation, the plaintiff's proposed constructive discharge claim grows out of the claims asserted in the administrative complaint and likely would have come within the scope of any investigation that reasonably could have been expected to result from the administrative complaint.  *See Calvert Group*, 551 F.3d at 303-04 (holding that the plaintiff's retaliatory termination claim was sufficiently related to allegations in the administrative complaint so as not to require separate administrative exhaustion); *Wedow*, 442 F.3d at 673-75 (holding that the plaintiffs' administrative charge, which alleged ongoing retaliatory denials of advancement opportunities, obviated the need for the separate administrative exhaustion of the plaintiffs' termination claim); *Hazel*, 2006 WL 3623693, at *8 (holding that the plaintiff's retaliatory non-selection and termination claims were not barred because these additional allegations "concern[ed] ongoing retaliatory activity of a kind similar to that alleged in her initial charge").  Accordingly, the court declines to hold that the plaintiff's proposed constructive discharge claim would be futile based on his failure to exhaust his administrative remedies.

### b. The Plaintiff's Proposed Claims Are Not Futile Under Rule 12(b)(6)

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (abrogating the oft-quoted language from *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief").

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct." *Iqbal*, 129 S. Ct. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

The court turns first to the plaintiff's proposed claim that his 2004 performance evaluation was retaliatory. To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse,[1] and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-69 (2006); *Jones*, 557 F.3d at 677. The plaintiff's burden is not great: he "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 271 F.3d 285, 299 (D.C. Cir. 2001).

The defendant contends that supplementation would be futile because the plaintiff has failed to properly allege a causal connection between the 2004 performance evaluation and any involvement in protected activity. Def.'s Opp'n at 10. Yet the plaintiff alleges that after he received his 2004 performance evaluation, his direct supervisor explained that she was under pressure to "hammer" the plaintiff and that her supervisors had complained that she had not "hammered" him enough. Pl.'s Mot. to Supplement Compl. at 5. Furthermore, the plaintiff alleges that he received a marginal assessment of his ability to "interact[] well with staff of other

---

[1] In the retaliation context, the term "adverse action" "encompass[es] a broader sweep of actions than those in a pure discrimination claim." *Baloch v. Kempthorne*, 550 F.3d 1191, 1198 n.4 (D.C. Cir. 2008). Thus, "[r]etaliation claims are 'not limited to discriminatory actions that affect the terms and conditions of employment' and may extend to harms that are not workplace-related or employment-related so long as 'a reasonable employee would have found the challenged action materially adverse.'" *Id.* (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64, 68 (2006)).

divisions, Reserve Banks, and other agencies and regulated institutions," despite the fact that prior to his filing of an EEO complaint, he had been praised for his communication skills. *Id*. at 4. These allegations, if true, would offer support to the plaintiff's theory that the 2004 performance evaluation was not an honest assessment of the plaintiff's performance, but was instead given in retaliation for his involvement in protected activity. *See Jones*, 557 F.3d at 680-81 (noting that evidence undermining the employer's assertion that a disputed performance evaluation was an honest assessment of the plaintiff's performance "'usually' is itself sufficient to allow a reasonable jury to infer retaliation") (citing *George v. Leavitt*, 407 F.3d 405, 413 (D.C. Cir. 2005)).

Furthermore, the plaintiff alleges that the defendant issued his 2004 performance evaluation in November 2004, shortly after the plaintiff filed his complaint in this court on October 4, 2004. *See generally* Compl. A plaintiff may establish a causal connection by showing a close temporal proximity between his involvement in protected activity and the materially adverse action taken by his employer. *See Cones v. Shalala*, 199 F.3d 512, 521 (D.C. Cir. 2000) (quoting *Mitchell v. Baldrige*, 759 F.2d 80, 86 (D.C. Cir. 1985)); *accord Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (noting that the temporal connection must be "very close": a three- or four-month period between an adverse action and protected activity is insufficient to show a causal connection, and a twenty-month period suggests "no causality at all").

Moreover, numerous courts have emphasized that a plaintiff alleging retaliation faces a relatively low hurdle at the motion to dismiss stage. *See Rochon v. Gonzales*, 438 F.3d 1211, 1220 (D.C. Cir. 2006) (observing that "in order to survive a motion to dismiss, 'all [the] complaint has to say' is 'the Government retaliated against me because I engaged in protected

activity'") (quoting *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1114 (D.C. Cir. 2000)); *accord Rhodes v. Napolitano*, 656 F. Supp. 2d 174, 186 (D.D.C. 2009) (holding that the plaintiff's allegations that her employer "initiated the vehicle investigation and subsequently issued the Letter of Counseling in retaliation for her 2003 or 2004 EEOC activity" was "sufficient to survive a motion to dismiss"); *Beckham v. Nat'l R.R. Passenger Corp.*, 590 F. Supp. 2d 82, 89 (D.D.C. 2008) (denying the defendant's motion to dismiss a retaliation claim because the plaintiff "satisfied her burden by alleging that she was denied benefits *because* of her opposition to actions made unlawful by Title VII"); *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007) (denying the defendant's motion to dismiss because "[a]t this early stage of the proceedings, [the] plaintiff can meet her *prima facie* burden simply by alleging that the adverse actions were caused by her protected activity"); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (noting that the plaintiff need not plead every element of his prima facie case). In sum, the plaintiff's allegation that the 2004 performance evaluation was given in retaliation for his involvement in protected activity is sufficient to meet this pleading standard.

The court next turns to the plaintiff's proposed claim for constructive discharge. To state a claim for constructive discharge, the plaintiff must show "(1) intentional discrimination existed, (2) the employer deliberately made working conditions intolerable, and (3) aggravating factors justified the plaintiff's conclusion that she had no option but to end her employment." *Cole v. Powell*, 605 F. Supp. 2d 20, 25 (D.D.C. 2009) (quoting *Turner v. District of Columbia*, 383 F. Supp. 2d 157, 171 (D.D.C. 2005)); *see also Mungin v. Katten Muchin & Zavis*, 116 F.3d 1549, 1558 (D.C. Cir. 1997) (holding that a plaintiff alleging constructive discharge must show that the "employer deliberately made working conditions intolerable and drove the employee out" of the position). "The mere existence of workplace discrimination is insufficient to make

out a constructive discharge claim." *Veitch v. England*, 471 F.3d 124, 130 (D.C. Cir. 2006). Rather, constructive discharge "requires a finding of discrimination *and* the existence of certain 'aggravating factors'" that would force a reasonable employee to resign. *Id.* (quoting *Mungin*, 116 F.3d at 1558); *see also Greer v. Paulson*, 505 F.3d 1306, 1320 (D.C. Cir. 2007) (affirming summary judgment for the defendant on a constructive discharge claim because the plaintiff "proffered no evidence of the requisite 'aggravating factors'"); *Hopkins v. Price Waterhouse*, 825 F.2d 458, 476 (D.C. Cir. 1987) (noting that "the mere fact of discrimination, without more, is insufficient to make out a claim of constructive discharge"), *rev'd on other grounds*, 490 U.S. 224 (1989); *Clark v. Marsh*, 665 F.2d 1168, 1173 (D.C. Cir. 1981) (observing that "case law does indicate a general reluctance to predicate a finding of constructive discharge upon the fact of discrimination").

      As previously noted, the plaintiff alleges that the defendant forced him to resign "when it continued to present him with false evaluations from 2000 through 2004." Pl.'s Mot. to Supplement Compl., Ex. 1 (Proposed Supplemental Compl.) ¶ 31. Although the defendant contends that the plaintiff has not identified any "aggravating factors" that forced his resignation, the plaintiff has alleged that these negative performance evaluations effectively precluded him from any further advancement in his career. *See id.* ¶ 12; Pl.'s Reply at 4. This Circuit has held that the denial of advancement opportunities may, under certain circumstances, create working conditions so intolerable as to satisfy the "aggravating factors" requirement. *See Hopkins*, 825 F.2d at 473 (holding that an employer's decision to deny the plaintiff partnership status, coupled with its decision not to re-nominate her for partnership consideration, constituted an "aggravating factor" because any reasonable employee in the plaintiff's position would have viewed these circumstances as "career-ending"); *Clark*, 665 F.2d at 1174 (holding that the

plaintiff's subjection to "a continuous pattern of discriminatory treatment, encompassing deprivation of opportunities for promotion, lateral transfer, and increased educational training, existing over a period of several years" constituted "aggravating factors" supporting her constructive discharge claim). Indeed, the Circuit has held that a plaintiff may establish the existence of "aggravating factors" by demonstrating that the continuous denial of advancement opportunities "essentially locked [the plaintiff] into a position from which she could apparently obtain no relief." *Clark*, 665 F.2d at 1174.

Whether the plaintiff's poor performance evaluations foreclosed the possibility of any future advancement and signaled the end of his career with the defendant are matters that will turn on the specific circumstances of this case. *See id.* The plaintiff cannot succeed on the claim merely by showing working conditions that were unpleasant but objectively tolerable.[3] *See Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 766 (D.C. Cir. 1997). Nor will the plaintiff succeed based solely on his subjective belief that the performance evaluations were "career-ending." *See Crenshaw v. Georgetown Univ.*, 23 F. Supp. 2d 11, 20 (D.D.C. 1998) (noting that the plaintiff's "subjective belief that her tenure has become intolerable is insufficient to support a claim for constructive discharge"). At this stage, however, the sole question before the court is whether the plaintiff's allegations state a plausible claim for constructive discharge. *See Iqbal*,

---

[3] The defendant argues that the plaintiff's retirement e-mail, which is attached as Exhibit 1 to the defendant's opposition, indicates that he resigned to pursue another opportunity and not because he was forced out. *See* Def.'s Opp'n at 4 & Ex. 1. Indeed, this Circuit has noted that a constructive discharge "does not occur when an employee leaves an unpleasant but objectively tolerable job because alternatives have become more attractive." *Taylor v. Fed. Deposit Ins. Corp.*, 132 F.3d 753, 766 (D.C. Cir. 1997). Although the court will consider this argument upon the defendant's motion for summary judgment, the court may not take the plaintiff's retirement e-mail into account in considering the futility of the plaintiff's claim because the court would then be relying on matters outside the pleadings. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (holding that the district court abused its discretion in considering matters outside the pleadings in resolving a motion to dismiss); *Smith v. Corrections Corp. of Am., Inc.*, 2009 WL 4849600, at *6 n.2 (D.D.C. Dec. 16, 2009) (noting that "the Court generally is precluded from considering matters outside the pleadings on a motion to dismiss").

129 S. Ct. at 1949.  Under this standard, the court cannot conclude that allowing the plaintiff to supplement his complaint with his proposed constructive discharge claim would be futile.

### 3.  The Defendant Will Not be Prejudiced by Permitting Supplementation

Lastly, the court is unmoved by the defendant's assertion that permitting the plaintiff to supplement his complaint would cause it significant prejudice.  *See* Def.'s Opp'n at 10-11.  As previously discussed, the plaintiff's proposed supplemental claims represent a continuation of claims asserted in the plaintiff's complaint.  *See supra* Part III.A.2.a.  Indeed, in the "Comments" section of the 2004 performance evaluation, the plaintiff expressly advised the defendant that that he considered the performance evaluation to be another manifestation of "the continuous retaliatory performance management program assessments that [he had] received since filing an EEO complaint against the Federal Reserve."  Pl.'s Mot. to Supplement Compl., Ex. 4 at 6.  The plaintiff reiterated his claim that the 2004 performance evaluation was retaliatory in his August 2005 opposition to the defendant's first motion for summary judgment.  *See* Pl.'s Opp'n to Def.'s 1st Mot. for Summ. J. at 38.  In a declaration filed by the plaintiff in support of that opposition, the plaintiff stated that he believed that he "was forced to retire from the Board because of the ongoing retaliatory actions taken against [him].  It became obvious that [he] would never have a successful career at the Board because of [his] EEO complaints."  *Id*., Ex. 24 ¶ 31.  Thus, the defendant was aware as early as August 2005, if not earlier, of the allegations that the plaintiff seeks to add to his complaint.

Furthermore, given that the court dismissed the claims premised on the plaintiff's performance evaluations in December 2005, *see* Order (Dec. 13, 2005), the plaintiff can hardly be faulted for waiting until the Circuit's reversal of that ruling before moving to add these claims, which grow out of the same evaluations.  Although the defendant complains that some

witnesses may have moved on to other employment or forgotten facts relevant to these new causes of action, the court does not believe that these issues, which are present in all litigation, warrant denial of the plaintiff's motion for leave to supplement.  And although the defendant notes that it may not have retained all documents relevant to the plaintiff's claims, this matter may be dealt with in a subsequent motion for spoliation and hardly justifies barring the plaintiff from asserting his claims.  Accordingly, the court concludes that any prejudice suffered by the defendant does not warrant denial of the plaintiff's motion to amend.

In sum, the court concludes that the plaintiff's proposed claims are not futile and that permitting the plaintiff to supplement his complaint will not significantly prejudice the defendant.  Given that leave to supplement should be freely granted, the court grants the plaintiff's motion.  *See Hall*, 437 F.3d at 100.

### B. The Court Denies Without Prejudice the Plaintiff's Rule 56(f) Motion for Discovery

The plaintiff seeks discovery regarding his retaliation claims concerning his performance evaluations from 2000 to 2004 pursuant to Federal Rule of Civil Procedure 56(f).  Pl.'s Mot. for Discovery at 3.  The plaintiff asserts that to date, there has been no discovery with respect to any of the plaintiff's performance evaluations.  *Id*.  This lack of discovery, the plaintiff argues, undermines his ability to respond to the defendant's anticipated motion for summary judgment.  *Id*.  The defendant responds that the plaintiff's Rule 56(f) motion is premature because although it intends to move for summary judgment on the plaintiff's claims regarding his performance evaluations, it currently has no motion for summary judgment pending.  Def.'s Opp'n at 11-12.  The plaintiff offers no reply to the defendant's assertion that his motion for discovery is premature.  *See generally* Pl.'s Reply.

Rule 56(f) authorizes discovery if a party opposing a motion for summary judgment "cannot present facts essential to justify its opposition." FED. R. CIV. P. 56(f). The rule "is intended to prevent railroading 'a non-moving party through a premature motion for summary judgment before the non-moving party has had the opportunity to make full discovery.'" *Graham v. Mukasey*, 608 F. Supp. 2d 50, 53 (D.D.C. 2009) (quoting *Berliner Corcoran & Rowe LLP v. Orian*, 563 F. Supp. 2d 250, 253 (D.D.C. 2008)). To succeed on a Rule 56(f) motion, the nonmoving party must state "concretely" by affidavit why additional discovery is needed to defeat summary judgment. *See Messina v. Krakower*, 439 F.3d 755, 762 (D.C. Cir. 2006) (citing *Strang v. U.S. Arms Control & Disarmament Agency,* 864 F.2d 859, 861 (D.C. Cir. 1989)); *Graham*, 608 F. Supp. 2d at 53 (noting that "plaintiffs must specifically explain what their proposed discovery would likely reveal and why that revelation would advance the plaintiffs' case") (citing *Hotel & Rest. Employees Union, Local 25 v. Att'y Gen*., 804 F.2d 1256, 1269 (D.C. Cir. 1986)), *vacated on other grounds*, 808 F.2d 847 (D.C. Cir. 1987).

Because the defendant has not moved for summary judgment, the plaintiff's Rule 56(f) motion is premature. *See* FED. R. CIV. P. 56(f). Accordingly, the court denies the plaintiff's motion without prejudice. The defendant, however, has indicated that it intends to file a renewed summary judgment motion within forty-five days of the resolution of the plaintiff's motions for leave to supplement the complaint and motion for discovery. *See* Joint Status Report (June 12, 2009) at 2. Upon the filing of such a motion, the plaintiff may renew his request for discovery pursuant to Rule 56(f).

## IV.  CONCLUSION

For the foregoing reasons, the court grants the plaintiff's motion for leave to supplement his complaint and denies without prejudice the plaintiff's motion for discovery.  An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 15th day of February, 2010.

RICARDO M. URBINA<br>
United States District Judge